Robert Lee HASKINS and wife, Frances
Lee Haskins, Appellants,

v.

Joe C. WINTERS and wife, Diane J.
Winters, Appellees.

No. 05–81–00809–CV.

Court of Appeals of Texas,
Dallas.

Aug. 13, 1982.

Rehearing Denied Sept. 22, 1982.

Garland D. Cardwell, Munson, Munson, Hynds, Watkins & Gordon, Sherman, for appellants.

Curtis L. Seidlits, Kennedy, Minshew, Campbell, Cain & Seidlits, Sherman, for appellees.

Before GUITTARD, C.J., and CARVER and WHITHAM, JJ.

WHITHAM, Justice.

Appellants, Robert Lee Haskins and wife, Frances Lee Haskins, appeal from a judgment non obstante verdicto in favor of appellees, Joe C. Winters and wife, Diane J. Winters. The jury returned findings favorable to the Haskins on implied dedication to public use, easement by estoppel, easement by implication and easement by way of necessity of and over a roadway along the eastern boundary of the Winters property affording ingress and egress from the Haskins property to a public highway. In three points the Haskins complain of the trial court's holding that there was no evidence to support the jury's findings. We conclude that the trial court correctly rendered judgment n.o.v. Accordingly, we affirm.

The attached sketch, which is not to scale, shows the roadway, the Winters and Haskins' property, the highway and the surrounding area.

N ↑

Winters

house

kennel

Property
Owners

1

2

3

4

5

6

Roadway

Barr

Hwy 69

Haskins
3ac

Haskins
12ac

The Winters own a tract of land bordered on the north by State Highway 69 in Grayson County, Texas. The Winters reside on the property and also operate a kennel and animal grooming business on the property. Part of the roadway on the Winters' property affords access to Winters' house and kennel. To the south of the Winters, separated by six separate property owners, lies the Haskins land consisting of connecting three-acre and twelve-acre tracts. The Haskins have owned and lived on their property since 1965. The roadway lies on the eastern portion of the Winters' property, continues in a southern direction, crossing the eastern portion of the six separate property owners, and runs toward the southern boundary of the Haskins' three-acre tract. The six in-between property owners have not been made parties to this suit and this action involves only that portion of the roadway located on the Winters' property. The position taken by any of the six in-between property owners on the Haskins' right to use the roadway is not in the record. Testimony establishes that the roadway had been in existence since 1944.

In their first point, the Haskins complain of the trial court's holding that there was no evidence to support the jury's findings of an implied dedication of the roadway to public use. At oral argument the Haskins conceded the trial court's ruling was correct; therefore, we need not consider the Haskins' claim that there was an implied dedication.

In their second point, the Haskins complain of the trial court's holding that there was no evidence to support the jury findings of an easement by estoppel over the roadway. At no time did the Haskins allege an easement by estoppel. Our examination of the record discloses three pleadings of the Haskins: an original petition, a first supplemental petition and a trial amendment filed over objection after both sides had closed and a proposed charge had been submitted to the parties. A liberal reading of the original petition discloses an allegation of an easement by way of necessity. The original petition does allege an implied easement. No other allegation of a right to use the roadway or the Winters' property appears in the original petition. The first supplemental petition alleges an implied dedication to public use. The trial amendment alleges that Winters' grantor reserved an easement across a portion of the property conveyed to Winters. The trial court submitted easement by estoppel issues to the jury over Winters' objection that there was no pleading to support submission of the issues.

■ For the purposes of this opinion we assume, without deciding, that the issue of an easement by estoppel was before the trial court. We conclude, however, that the trial court correctly disregarded the jury's answers which the Haskins contend found an easement by estoppel over the roadway. To establish that the owner of land is estopped to deny the existence of an easement, one must show that the owner made representations which have been acted on by a purchaser to his detriment. *Drye v. Eagle Rock Ranch, Inc,* 364 S.W.2d 196, 209 (Tex.1962).

■ We turn then to a consideration of the evidence the Haskins rely on to show the estoppel. In addition to evidence of the use of the roadway by Haskins and certain of his predecessors in title, the Haskins appear to rely on the following facts to support estoppel. On November 9, 1973, Dale H. Gouge conveyed to the Winters property across which a part of the roadway lies. On April 13, 1971, J.C. Wolfe previously had conveyed the property to Gouge. The conveyance from Wolfe to Gouge refers to the roadway in one of its descriptive calls as follows: "Thence North with the east line of both said Survey and Brown 50 acre tract, along a fence on the East line of a *roadway* serving the Rector tract . . . ." [*Emphasis added*]. The Haskins three-acre tract is the "Rector tract" referred to in the call in the Wolfe to Gouge deed. The property conveyed by Gouge to Winters contains a part of the roadway referred to in the Wolfe to Gouge conveyance. At the time of the Gouge to Winters conveyance, the Wolfe to Gouge deed was

duly acknowledged for record and recorded in the deed records of the county in which the property lies. Sometime during July of 1973, and prior to the conveyance by Gouge, Winters observed a member of the Haskins family using the roadway. Winters then discussed the matter with Gouge. Gouge told Winters that the Haskins had a right to use the roadway.[1] This discussion occurred prior to the conveyance from Gouge to Winters. Prior to the Winters acquisition of their property, the Haskins contributed to the cost of a culvert at the intersection of the roadway and the highway. At the time Winters purchased his property he removed a sign at the intersection of the highway and the roadway which read "Haskins Private Driveway." In November of 1980, Winters constructed two gates across the roadway on his property and offered Haskins a key to the lock on the gates.[2] When asked if he had any objections to the Haskins themselves being allowed to cross his property to gain access to theirs Winters replied, "Well I've been trying to be friendly with Mr. and Mrs. Haskins and let them use the thing. I don't want an easement across it."

We conclude that this evidence does not establish the required representation acted on by the Haskins to their detriment. Use of the roadway by the Haskins and certain of their predecessors in title does not estop the Winters to deny the existence of an easement. That use might have been based on reasons not alleged and proved in this record, such as permission of the owner. The Winters' knowledge of the Haskins' use of the roadway from personal observation, reading the driveway sign, or otherwise, does not estop the Winters to deny the existence of an easement because such knowledge might be consistent with a permissive use. Likewise, the desire of the Winters to be good neighbors, by giving the Haskins a key to their gates would be consistent with a permissive use, as would also the earlier construction by the Haskins of a culvert at the intersection of the highway and roadway. Users by permission may also need keys and culverts. Gouge's statement to Winters about the Haskins' right to use the roadway cannot estop Winters unless Gouge or Winters communicated that statement to the Haskins and there is no evidence that they did so. None of these circumstances is evidence of a representation by the Winters or their predecessors of the existence of an easement. We hold, therefore, that there is no evidence to support findings of court or jury of an easement by estoppel over the roadway.

In their third point, the Haskins complain of the trial court's holding that there was no evidence to support the jury findings of an easement by implication and an easement by way of necessity over the roadway.

■ The necessary elements to establish an easement by implication are: (1) there at one time existed a unity of ownership of the dominant and servient estates; (2) the use was apparent at the time of the grant severing the two estates; (3) the use of the easement until the time of the grant was continuous, so that the parties must have intended that its use would pass by the grant; and (4) the easement was necessary to the fair and enjoyable use of the dominant estate. *Bickler v. Bickler,* 403 S.W.2d 354, 357 (Tex.1966).

■ The necessary elements to establish an easement by way of necessity are: (1) there at one time existed a previous unity of ownership of the dominant and servient estates; (2) the roadway is a necessity for the enjoyment of the dominant estate; and (3) such necessity existed at the time of the severance of the two estates. *Estate of*

1. "Question: Did you (Winters) ever talk to anyone else concerning the roadway at approximately the time of your purchase?"

    "Answer: When I purchased the place, Dale Gouge had it."

    "Question: What did Mr. Gouge tell you?"
    "Answer: He said the only person that had a right to get in and out of that was Haskins."

2. On September 15, 1980, Winters had obtained an injunction against an adjoining landowner named Barr enjoining and restraining Barr from in effect using the roadway. These gates were Winters' reaction and answer to Barr's refusal to obey that injunction.

*Waggoner v. Gleghorn,* 378 S.W.2d 47, 48 (Tex.1964).

██ At oral argument the Haskins conceded that there was no showing of actual unity of ownership. Instead, the Haskins urged a somewhat substitute concept of unity of ownership grounded on the theory that Gouge owned a large tract of land which was contiguous at one boundary with the Haskins land and that when Gouge, who was never the owner of the Haskins property, sold to the Winters a small tract, not contiguous to the Haskins' land but at an opposite end, Gouge and Winters somehow created an easement for the benefit of the Haskins. The Haskins appear to urge support for this concept of unity of ownership by again emphasizing the same evidence used to support an easement by estoppel. We do not agree that the deed from Gouge to Winters, or the conversation between them, created an easement for the benefit of Haskins by implication or necessity. We conclude that easements by implication and way of necessity were not created by reason of the fact that prior to conveyance of his property to him by Gouge that Winters observed a member of the Haskins family using the roadway, then discussed the matter with Gouge, and was told by Gouge that Haskins had a right to use the roadway. We hold, therefore, that this evidence does not show the required unity of ownership, nor does it create an easement for the benefit of the Haskins under the Haskins' substitute concept of unity of ownership. Therefore, Haskins failed to prove the first of the necessary elements to establish an easement by implication and an easement by way of necessity—unity of ownership. Thus, we hold that there is no evidence to support findings of court or jury of an easement by implication or of an easement by way of necessity over the roadway.

██ Although we have disposed of the three points asserted by the Haskins, in view of a recurring theme of argument made by the Haskins there is one other matter we consider necessary to address in order to be certain that we have disposed of all of the Haskins' contentions. After both sides had closed and a proposed charge had been submitted to the parties, the trial court, over objection, granted the Haskins leave to file a trial amendment which alleged that at the time of the Gouge to Winters conveyance Gouge reserved an easement across the eastern portion of Winters' property from the southern boundary thereof to the highway. By cross-point Winters asserts an abuse of discretion by the trial court in permitting the filing of Haskins' trial amendment. In view of our disposition of the matter, we need not address that cross-point. We conclude that Gouge did not reserve an expressed or implied easement over the roadway. We understand the Haskins' argument for easement by reservation to be based on the fact that prior to the Gouge to Winters conveyance that Winters observed a member of the Haskins family using the roadway, then discussed the matter with Gouge, and was told by Gouge that Haskins had a right to use the roadway. We hold that this evidence does not constitute a reservation of an easement by Gouge; therefore, there is no evidence to support findings of court or jury of an expressed or implied easement by reservation over the roadway.

Affirmed.