Leola King WALLACE, Susan Lee Wallace, Bilby Joe Wallace, and Bert Carol Wallace, Appellants,

v.

A.D. McKINZIE and Velma McKinzie, Appellees.

No. 07–93–0046–CV.

Court of Appeals of Texas, Amarillo.

Dec. 29, 1993.

Rehearing Denied Jan. 26, 1994.

Carr, Fouts, Hunt, Craig, Terrill & Wolfe, L.L.P., Donald M. Hunt, Gary M. Bellair, Lubbock, for appellants.

Scarborough, Black, Tarpley & Boone, Charles Scarborough, Abilene, for appellees.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

DODSON, Justice.

Appellants, Leola King Wallace and her children, Susan Lee Wallace, Bilby Joe Wallace, and Bert Carol Wallace (the Wallaces), appeal from a judgment granting a permanent equitable easement of ingress and egress across their property in favor of appellees, A.D. McKinzie and his wife, Velma McKinzie (the McKinzies). We affirm.

In four points of error, the Wallaces assert that the trial court erred in awarding the McKinzies an equitable easement over the road leading to Section 44 because (1 & 2) the evidence is legally or factually insufficient to support the jury's finding that the McKinzies have an equitable easement. Alternatively, if any evidence supports the equitable easement finding, the Wallaces contend (3) the evidence, findings, and the judgment fail to describe the easement with sufficient certainty allowing the easement to be located, and (4) the McKinzies failed to plead that they were entitled to a permanent easement, and without any unity of title between the McKinzies and the Wallaces the easement awarded should be an easement in gross, as a matter of law, and not a permanent easement.

The Wallaces own Sections 29, 30, 31, 32, 43, 45, 46, and the south one-half of Section 44, in Block L, H. & T.C. Railroad Company Survey, Kent County, Texas. The McKinzies own the north one-half of Section 44. This property is landlocked by the Wallaces' property—Section 43 to the north, Section 31 to the east, the south one-half of Section 44 to the south, and Section 45 to the west.

A road, maintained and considered by the Wallaces as a county road for some time, extends northwest from a farm-to-market road located east of the properties. The road passes through Section 31 and the southwest corner of Section 32 into Section 43 and ends at a windmill in the west half of Section 43. Along the road, about one-forth of the way through Section 43, a turn-off road, approximately 400 yards in length, heads south into Section 44. This is and has been the only road providing access to Section 44 since the McKinzies purchased their north one-half of that section in 1920.

A.D. McKinzie and his niece, Cornelia Cheyne, executed and filed an affidavit in the deed records of Kent County, claiming an easement by prescription over the roads on Wallaces' property for the purpose of ingress and egress to Section 44. The Wallaces discovered the affidavit and initiated this suit to cancel the affidavit and remove the resulting cloud on their title to the property. The McKinzies responded by affirmatively pleading, among other things, that they were entitled to an easement by estoppel.

To support the theory of easement by estoppel, the McKinzies claimed detrimental reliance on two representations. First, A.D. McKinzie testified that he had a conversation about the roadway with Bert Wallace, and that he believed what he was told. After this conversation, A.D. McKinzie cut brush, tried to keep water from running down the road, and made improvements to his property. Second, A.D. McKinzie explained that he reached an agreement with Bilby Wallace to place double locks on the gate in the road at the eastern boundary line of Section 43. This arrangement allowed both parties access to the road. After reaching this agreement, A.D. McKinzie continued to clear brush and work the road leading to Section 44.

The jury found that the McKinzies had an equitable easement over the road leading to Section 44. Based on this finding, the trial court granted the McKinzies a permanent equitable easement of "sufficient width to permit the full possession, use and enjoyment of said Section 44." The Wallaces now challenge the existence, description, and permanence of the easement.

By their first and second points of error, the Wallaces claim the evidence is legally and factually insufficient to support the jury's answer to question number three because "no evidence exists that any representation was made to the McKinzies or that they relied to their detriment." We disagree.

■ In reviewing a legal insufficiency point, we must look at the record in the light most favorable to the finding to see if any probative evidence or any reasonable inferences therefrom support the finding, while at the same time disregarding all evidence or reasonable inferences therefrom to the contrary. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981). In reviewing a factual insufficiency point, we must look at the entire record to determine if probative evidence exists to support the finding. If it does, we must determine whether the evidence is so weak or the answer so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust to support the finding. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

Question number three, the accompanying instruction, and the jury's answer read:

Do you find that Defendants [the McKinzies] have an equitable easement over the "road to Section 44?"

Answer "Yes" or "No"

ANSWER: ___Yes___ 10–2

Instruction: In connection with this question you are instructed that in order to establish an equitable easement, Defendants must establish each of the following elements: (1) the landowner or a predecessor to his interest makes a representation to the adjacent landowner or a predecessor to the adjacent landowner's interest that certain rights exist to use the landowner's property; (2) the adjacent landowner believes such representation to be true; and (3) the adjacent landowner relies upon such representation.

Here, we are neither concerned with the correctness of the definition of equitable easement nor the trial court's application of the equitable easement in the judgment. Those matters are not challenged in this Court. Our only inquiry is whether probative evidence supports the jury's finding on the elements of representation and reliance.

■ The doctrine of equitable estoppel or estoppel *in pais* is grounded on the condition that justice forbids one to gainsay his own acts or assertions. *See Campbell v. Pirtle*, 790 S.W.2d 372, 374 (Tex.App.—Amarillo 1990, writ denied). As the court stated in *Campbell*, "the formal equitable estoppel or estoppel *in pais*—arises when one is not permitted to disavow his conduct which induced another to act detrimentally in reliance upon it." *Id.* In *Brown v. Federal Land Bank of Houston*, 180 S.W.2d 647, 652 (Tex. Civ.App.—Fort Worth 1944, writ ref'd w.o.m.), the court stated:

There are so many ways in which estoppel may arise, they need not be defined here, but broadly speaking, the general rule seems to be laid down in 17 Tex.Jur. 128, sec. 2, where this is said: "The idea or notion which inheres in the word 'estoppel' is that one, *who by his speech or conduct has induced another to act in a particular*

*manner, ought not to be permitted to adopt an inconsistent position, attitude or course of conduct and thereby cause loss or injury to such other."* (Emphasis added).

Further, "one who by his conduct has induced another to act in a particular manner should not be permitted to adopt an inconsistent position and thereby cause loss or injury to the other." *Fabrique, Inc. v. Corman,* 796 S.W.2d 790, 792 (Tex.App.—Dallas 1990), *writ denied per curiam,* 806 S.W.2d 801 (Tex.1991). Thus, it is well settled that estoppel may arise from conduct or from a failure to act. *North Clear Lake Development Corp. v. Blackstock,* 450 S.W.2d 678, 684 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.).

The evidence shows that for a period of over seventy years the McKinzies have used the road in question, for ingress and egress to their landlocked property. The Wallaces have never objected to the McKinzies' use of the road. Neither have the Wallaces ever told the McKinzies they could not use the road. Thus, through their permissive and acquiescing behavior, the Wallaces have engaged in representations by their conduct. This evidence alone constitutes legally sufficient evidence (*i.e.,* some evidence) to support the jury's finding that the Wallaces made a representation to the McKinzies that certain rights exist to use the Wallaces' property.

This same conduct-evidence and the reasonable inferences therefrom also support the jury's determination that the McKinzies relied on the Wallaces' representation. In fact, the only inference available from the evidence is that the McKinzies relied on the Wallaces' conduct, which permitted the McKinzies to use the road in question for ingress and egress to the property. Thus, the evidence is also legally sufficient to support the finding that the McKinzies relied on the representation made by the Wallaces.

In addition to this conduct-evidence, A.D. McKinzie testified that he had a conversation with Bert Wallace. He acknowledged that he believed what he was told in that conversation. A.D. McKinzie also testified that he

entered into an agreement with Bilby Wallace to place double locks on the gate where the road intersects with the eastern boundary line of Section 43. Further testimony revealed that, after those conversations, A.D. McKinzie cleared brush, worked the road, and made improvements to the McKinzie property. Under these circumstances, we conclude that the jury's answer was not clearly wrong or manifestly unjust. Points one and two are overruled.

In their third point of error, the Wallaces argue that the judgment is void and unenforceable as a matter of law because the evidence, findings, and the judgment fail to describe the easement with sufficient certainty. We disagree.

The judgment provides:

It is further ORDERED, ADJUDGED, AND DECREED that the Defendants have a permanent equitable easement across Plaintiffs' land for ingress and egress to their property; said easement is on or over the approximate 400 yard road, originating from the old county road which currently runs through Plaintiffs' property. Defendants have a permanent easement on and over the 400 yard road going to Section 44, from the county maintained road in Section 43, which enters Section 44 from the north near the middle of Section 44. Said easement will follow, generally, the existing approximate 400 yard road, from the county road existing in the southeast corner of Section 43, Kent County, Texas and entering Section 44 at the existing gate to the A.D. McKinzie property. *Said county road and easement are further located and shown as a road on a map attached to this judgment; the pertinent portion of said map is included as a portion of this judgment on the following page three (3), with the county road and easement marked accordingly.* Said easement will be of sufficient width to permit full possession, use and enjoyment of said Section 44. (Emphasis added).

It is well settled that the rule relating to the sufficiency of descriptions of easements is the same as that required in conveyances of land. *Vrabel v. Donahoe Creek Watershed Authority,* 545 S.W.2d 53, 54

(Tex.Civ.App.—Austin 1976, no writ); *Bear v. Houston & T.C. Ry. Co.*, 265 S.W. 246, 249 (Tex.Civ.App.—Galveston 1924, no writ). In that regard, the description must be so definite and certain upon the face of the instrument itself, or in some other writing referred to, that the land can be identified with reasonable certainty. *Greer v. Greer*, 144 Tex. 528, 191 S.W.2d 848, 849 (1946). The certainty required must be such that a surveyor can go upon the land and locate the easement from the description given. *Vrabel*, 545 S.W.2d at 54. It is also proper to attach to an instrument conveying land a map showing the property conveyed, and such map can be looked to in aid of a defective written description in the instrument. *River Road Neighborhood v. South Texas Sports*, 720 S.W.2d 551, 558 (Tex.App.—San Antonio 1986, writ dism'd).

██ Here, the judgment recites that the McKinzies have an easement on the 400 yard road originating from the old-county-maintained road in Section 43. The judgment further describes the easement as the 400 yard road "which enters Section 44 from the north near the middle of Section 44." The judgment then makes reference to an attached map. The map displays the roads mentioned in the judgment and identifies each of the relevant sections of the survey. Consequently, we conclude that the judgment, along with the attached map, describe with sufficient certainty the easement granted to the McKinzies. Point three is overruled.

The Wallaces' fourth point of error reads:

Alternatively, if any evidence supports the equitable easement finding, then the district court erred in rendering judgment awarding the McKinzie defendants a "permanent" equitable easement on the Wallace ranch because the McKinzies failed to plead that they were entitled to a permanent easement and instead pled and secured a finding on equitable estoppel, but without any unity of title ever existing between the McKinzies and the Wallaces; hence, any easement is an easement in

gross as a matter of law and not a permanent easement.

By this point of error, the Wallaces first contend that the trial court erred in rendering judgment awarding the McKinzies a "permanent" equitable easement on the Wallaces' ranch because the McKinzies failed to plead they were entitled to a permanent easement. In that regard, we note that the Wallaces do not specifically claim that the McKinzies' pleadings failed to give them fair notice that the McKinzies were claiming a permanent easement as required under Rule 47(a) of the Texas Rules of Civil Procedure. Nevertheless, the Wallaces do claim that the McKinzies' pleadings simply do not support the permanent easement rendered by the trial court. In support of their position, the Wallaces rely upon *Bains v. Parker*, 143 Tex. 57, 182 S.W.2d 397, 399 (1944) and *Johnson v. Faulk*, 470 S.W.2d 144, 148 (Tex.Civ.App.—Tyler 1971, no writ). However, these cases deal with pleadings and requirements for implied easements and easements by necessity. They do not speak to the pleading and requirements of an equitable easement that the trial court rendered in this instance.

██ In the case before us, the McKinzies, by their pleadings, sought to establish an equitable easement which they had used for more than seventy years. They acknowledge that their property was landlocked by the Wallaces' property. The McKinzies allege the Wallaces brought this action to establish that the McKinzies had no easement over the Wallace property for ingress and egress, in a effort to effectuate a purchase of the McKinzie property, by the Wallaces, at a less than market value price.[1] The thrust of the McKinzies' pleadings is to establish a permanent easement to their property to prevent it from being landlocked without ingress and egress.

Also, we note that the McKinzies' failure to use the word "permanent" in connection with pleading easement by estoppel is not fatal. *See Roark v. Allen*, 633 S.W.2d 804, 810 (Tex.1982) (concluding, in a medical malprac-

---

**1.** If the Wallaces prevail in their contention that the easement is in gross and not appurtenant, the McKinzie property will be forever landlocked to any subsequent owner of the property other than the Wallaces.

tice action involving the manner in which the doctor delivered a child, that the failure to use the word "negligent" in connection with the delivery or otherwise specifically indicate that the doctor failed to exercise ordinary care was not fatal to the pleaded action). In this instance, the Wallaces received fair notice that the McKinzies were claiming a permanent easement for ingress and egress to their otherwise landlocked property. *See* Tex.R.Civ.P. 47(a) and 90. The Wallaces' pleading challenge is overruled.

Under the fourth point of error, the Wallaces further contend that the McKinzies' equitable easement is an easement in gross, as a matter of law, because there is no unity of title between the Wallaces and the McKinzies. To support their position, the Wallaces rely on a statement from *Forister v. Coleman,* 418 S.W.2d 550, 559 (Tex.Civ.App.— Austin 1967), *writ ref'd n.r.e. per curiam,* 431 S.W.2d 2 (Tex.1968) to the effect that, when an easement is established by estoppel, the "easement can become legally attached to the dominant estate *only if the same person has unity of title* to both the easement and the dominant estate." (Emphasis added). In that regard, we must point out that there is unity of title between the easement and the dominant estate. The dominant estate is the north one-half of Section 44, owned by the McKinzies, and, by the judgment, the McKinzies were granted ownership of the easement.

In essence, the Wallaces seem to contend that there must be unity of title between the dominant estate and the servient estate before the court can impress an equitable easement (*i.e.* easement by estoppel). Nevertheless, they do not cite us to authority to support that position, nor have we found any authority which makes such a limitation on the imposition of an equitable easement as opposed to other types of easements, such as an implied easement. *See Bickler v. Bickler,* 403 S.W.2d 354, 357 (Tex. 1966); *Haskins v. Winters,* 641 S.W.2d 603, 607 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). Moreover, the law does not favor easements in gross, and an easement will never be presumed to be in gross if it can fairly be

construed to be appurtenant. *McWhorter v. City of Jacksonville,* 694 S.W.2d 182, 184 (Tex.App.—Tyler 1985, no writ); *Ginther v. Bammel,* 336 S.W.2d 759, 763 (Tex.Civ. App.—Waco 1960, no writ); *Stuart v. Larrabee,* 14 S.W.2d 316, 319 (Tex.Civ.App.—Beaumont 1929, writ ref'd). The Wallaces' fourth point is overruled.

Accordingly, the trial court's judgment is affirmed.

REYNOLDS, C.J., dissenting.

REYNOLDS, Chief Justice, dissenting.

Deducing that there is no more than a scintilla of evidence to support the jury's finding of an equitable easement, I respectfully dissent. I would sustain the Wallaces' properly preserved first point of error, reverse the trial court's judgment, and render judgment that the McKinzies take nothing by their action.

The judgment decreeing the McKinzies' equitable easement is founded upon the jury's 10 to 2 answer to the submitted third question, which is reproduced in the majority opinion and need not be repeated here. The submission apparently was patterned after, but not in complete conformity with, the doctrine of estoppel in pais as applied to easements involving land in *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196 (Tex.1962). Generally, the doctrine operates to estop a landowner from denying the existence of an easement on his property when he has made a representation granting, or confirming the existence of, an easement to another who believed the representation and relied upon it to his detriment. *Id.* at 209, 211; *Storms v. Tuck,* 579 S.W.2d 447, 451–52 (Tex.1979).

In support of the theory of easement by estoppel, A.D. McKinzie testified that he had a conversation with Bert Wallace, the Wallace children's grandfather, about the roadway; but, by using a motion in limine and timely trial objections, the Wallaces prevented the jury from hearing the words of the conversation which, the McKinzies candidly concede, were hearsay.[1] McKinzie acknowl-

---

1. Neither the time nor the place of the conversa-      tion is shown in the record.

edged that he believed what he was told.[2] After the conversation, McKinzie cut brush, tried to keep water from running down the road, and made improvements to his property. At some undesignated time and place, he also reached an agreement with Bilby Wallace, the Wallace children's father, to interlock two locks placed on the gate across the county road at the eastern boundary of section 43, because "they have to use it and we have to use it."

Using the first of their four points of error to contend the evidence was legally insufficient to support the jury's affirmative finding of an equitable easement, the Wallaces assert no evidence exists that any representation was made to the McKinzies, or upon which they relied to their detriment. In presenting the point, the Wallaces recognize that it is sustainable only if the evidence and reasonable inferences supporting the answer, viewed in its most favorable light, amounts to nothing more than a scintilla. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). Evidence offered to prove a vital fact amounts to no more than a scintilla, and in legal effect is no evidence, when it is so weak that it merely creates a mere surmise or suspicion of the existence of the fact sought to be proved. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

Of course, the burden of proving an estoppel and the essential elements thereof is on the party asserting it, and the failure to prove any one or more of the elements is fatal. *Barfield v. Howard M. Smith Company of Amarillo,* 426 S.W.2d 834, 838 (Tex. 1968). The testimony of A.D. McKinzie furnishes the only evidence of the representation element of equitable estoppel submitted to the jury. His testimony of and references to the representation were recorded, except for the intervening objections, rulings, a reiterated question, and unreferenced questions and answers, in this order:

Q (by the McKinzies' counsel) Now, I'm not asking you the words spoken, but did you have a conversation with Mr. Bert Wallace about the roadway?

*       *       *       *       *       *

A (by A.D. McKinzie) Yes.

Q Okay. And after that conversation, what did you do then?

A Well, I went ahead with my chores and cut brush and tried to keep the water from running right down the road.

*       *       *       *       *       *

Q All right. Now following that time, did you also make improvements to your property?

A Yes.

*       *       *       *       *       *

Q Well, whatever was said to you by Mr. Wallace in your mind, not the words said, but did you believe what was told you?

A Yes.

Admittedly, no other testimony illuminates the conversation between A.D. McKinzie and Bert Wallace.

At least since 1875, a parol representation creating an easement by estoppel in pais requires the grant of a right to such easement in the owner's land. *Harrison v. Boring,* 44 Tex. 255, 267–68 (1875). However, in the present cause, a different representation, *viz.,* "that certain rights exist to use the landowner's property," was submitted to the jury and, absent an objection to the form of the submission, this representation binds the parties. *Allen v. American National Insurance Company,* 380 S.W.2d 604, 609 (Tex. 1964). Thus, the submitted representation is the one subjected to the no evidence contention.

Nevertheless, the bare "conversation with Mr. Bert Wallace about the roadway" neither evidences nor produces a legitimate inference "that certain rights exist to use the landowner's property" so as to create an equitable easement in the 400–yard road. Without more, the substance of the unexplained "conversation ... about the roadway," rather

2. An objection by the Wallaces was sustained, but the court was not requested to, and did not, instruct the jury to disregard the testimony.

than being the grant of the alleged easement, could as reasonably have been the condition of the road, or some aspect of it. Or, more reasonably, the conversation about the roadway could have concerned the continued permissive use of the road by the McKinzies. That reasonable interpretation of the conversation at least has some support in the record, for Bert Carol Wallace testified that the road is used by the Wallaces to check on their fences, by hunters he has allowed in there, and by the McKinzies, the people working for them and hunters to whom they had given permission. He said, "The use has been permissive all these years," but he was not willing to give the McKinzies an easement. Conformably, A.D. McKinzie testified that both he and the Wallaces used the road, and his use was not hostile to the Wallaces. Of course, use of the roadway by the McKinzies and their invitees does not estop the Wallaces to deny the existence of the alleged easement. *Haskins v. Winters,* 641 S.W.2d 603, 607 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

Obviously, as the foregoing discussion illustrates, the testimony of the "conversation with Mr. Bert Wallace about the roadway" does no more than raise a surmise or suspicion of the substance of the conversation. As such, under the authorities previously cited, it is, in legal contemplation, no evidence of a grant of certain rights in the roadway which would constitute an easement by estoppel. The wise policy of the law does not permit a citizen to be deprived of his property upon mere surmise or suspicion. *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059, 1063 (1898).

To sustain the jury's finding of an equitable easement, the majority relies most heavily on the Wallaces "permissive and acquiescing behavior"—*i.e.,* they never objected to the McKinzies' use of the road for seventy years, and never told the McKinzies they could not use the road—as legally sufficient evidence to support the jury's finding that the Wallaces made a representation to the McKinzies that certain rights exist to use the Wallaces' property. However, the McKinzies' claim of an easement was neither submitted to the jury, nor defended on appeal, on the theory of the Wallaces' permissive and

acquiescing conduct; rather, the claim was submitted to the jury, and defended on appeal, on the theory of a representation that certain rights exist to use Wallaces' property.

Moreover, without more than a "conversation ... about the roadway," the conduct of the Wallaces before and after the conversation cannot aid the McKinzies in their claim of an easement by representation. At most, the Wallaces' conduct merely shows that the McKinzies' use of the roadway was permissive, thereby constituting only a license, which could not and did not ripen into an equitable easement. *Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622, 627 (1950). Thus, the failure of the McKinzies to show more than a surmise or suspicion of the representation of an easement upon which they rely is fatal to their cause of action. *Barfield v. Howard M. Smith Company,* 426 S.W.2d at 838.

Consequently, I would sustain the Wallaces' first point of error, reverse the judgment, and render a take-nothing judgment, the judgment the trial court should have rendered. Tex.R.App.P. 80(b)(3). This disposition of the appeal would pretermit the addressing of the Wallaces' remaining three points.[3] Tex.R.App.P. 90(a).

---

**3.** Because it should not be necessary to address the remaining points, the lack of their address in this dissent is not to be taken as an agreement with the majority's disposition of them.