

# NUMBER 13-17-00011-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOHN CORES,                                                                                   Appellant,

v.

CARROLL F. LABORDE,
BARBARA LABORDE AND
LABORDE PROPERTIES, LP,
A TEXAS LIMITED PARTNERSHIP,                                          Appellees.

**On appeal from the 2nd 25th District Court
of Gonzales County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

By six issues, which we construe as three, appellant John Cores challenges the

trial court's declaratory judgment in favor of appellees Carroll LaBorde,[1] Barbara LaBorde,

and LaBorde Properties, L.P. (collectively LaBorde) regarding an easement by estoppel.

---

[1] Carroll LaBorde died on July 7, 2015, as this suit was pending.

Cores alleges that: (1) the evidence was legally insufficient to support a finding of an easement by estoppel; (2) that the trial court improperly transferred venue from Hays County to Gonzales County; and (3) that the trial court erred in entering a declaratory judgment that was duplicitous of claims already made. We affirm.

## I. BACKGROUND

This dispute arises between two property owners regarding an easement road. Cores owns an 89.96-acre tract of land in Gonzales County. LaBorde owns a 386.60-acre piece of land adjacent to Cores's. To the southeast of Cores's property are tracts of land that are landlocked. An easement road was constructed to allow access to the landlocked properties. The easement road runs along the northern boundary of Cores's property, turns, and then continues south towards the landlocked properties. The western part of the LaBorde tract also butts up against the easement road and a gate was constructed on the LaBorde fence line. Cores filed suit to stop the LaBordes from using the easement road to access their land. Cores claims that the LaBorde property is not landlocked, that they have access to their property from other roads, and the LaBorde land was not included as part of the easement properties. The LaBordes argue the former landowners have continually had access to the easement road and an easement by estoppel was created due to the access.



County Road 481

Cattle Pens

LaBorde Property

Dam Road

Gate

Cores Property

Easement Road

Tracts benefitted by written easement

## A. History

Initially, the undivided tract of land that now comprises the LaBorde and Cores properties was jointly owned by the Francis and Brown families. The families ran a cattle operation on their land, with the cattle pens being housed on what is now the LaBorde property. In 1979, the families divided the land. Cores's property was owned by the Brown family, and the LaBordes property was owned by the Francis family. However, even after the land was divided, the cattle operation continued to run, with both families having access to the cattle pens via the easement road. In 1986, the Brown family divided their land into multiple tracts, with each separate tract going to members of the Brown family. In 2004, Rafe Jackson purchased the Francis tract (LaBorde property) as it stands now.

In 2008, Cores purchased his tract of land from members of the Brown family. In 2010, the LaBordes bought Jackson's land from him.

## B. Dispute Develops

Based on testimony presented at the bench trial, all prior owners of both the LaBorde and Cores's land had used the easement road to access their properties. Issues developed once the two parties to this suit became neighbors. Both sides put on deposition testimony from Jackson, Gail Brown Schauer[2], and Rebecca Connell[3]. Based on the testimony of these three witnesses, the trial court held that an historical use of the easement road existed. The trial court denied Cores's petition for a temporary and permanent injunction and attorney's fees and granted LaBorde's request for a declaratory judgment and held that an easement by estoppel existed on behalf of the LaBordes. This appeal by Cores followed.

## II. PROPER VENUE

By what we construe as his second issue, Cores alleges it was error to transfer venue from Hays County to Gonzales County. Cores originally filed suit in Hays County, where the LaBordes have a residence. The LaBordes filed a motion to transfer venue to Gonzales County because that is where the property at issue is located.

## A. Applicable Law and Discussion

An easement confers upon one person the valuable right to use the land of another for a specific purpose. *Hubert v. Davis*, 170 S.W.3d 706, 710 (Tex. App.—Tyler 2005, no

---

[2] Gail Brown Schauer previously owned Cores's property but later traded for a different piece of property with an aunt, Pat Brown Eckols.

[3] Rebecca Connell is Gail Brown Schauer's sister and owned landlocked property south of the LaBorde land.

4

pet.). Since an easement is an interest in land, the grant of an easement should be drawn and executed with the same formalities as a deed to real estate. *Id.* The doctrine of equitable estoppel, or easement by estoppel, provides an exception to prevent injustice and protect innocent parties from fraud. *Allen v. Allen*, 280 S.W.3d 366, 381 (Tex. App.—Amarillo 2008, pet. denied).

> Under section 15.011 of the Texas Civil Practice and Remedies Code, it states:
>
> Actions for the recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property *shall* be brought in the county in which all or a part of the property is *located*.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.011 (West, Westlaw through 2017 1st C.S.) (emphasis added). Although Cores contends that venue was proper in Hays County because the LaBorde homestead was located there, because an easement is an interest in real property, venue was proper in Gonzales County, where the property in question was located. The trial court properly transferred venue from Hays to Gonzales County. We overrule Cores's second issue.

### III.  LEGAL SUFFICIENCY

By multiple sub-issues which we construe as one issue, Cores challenges the legal sufficiency of the trial court's finding of an easement by estoppel. By his sub-issues, Cores argues that (1) alleged prior permissive use of an express easement did not give rise to an easement by estoppel for future property owners, (2) a later-created express easement precluded a finding of an easement by estoppel, and (3) an owner's silence regarding use of an easement is not enough to establish an easement by estoppel.

5

**A.      Standard of Review**

In an appeal from a bench trial, the trial court's findings have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). A trial court's findings may be reviewed for legal and factual sufficiency under the same standards that are applied in reviewing evidence to support a jury's answers. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When the appellate record contains a reporter's record, as it does here, findings of fact are not conclusive and are binding only if supported by the evidence. *Horner v. Heather*, 397 S.W.3d 321, 324 (Tex. App.—Tyler 2013, pet. denied). We review the trial court's conclusions of law *de novo*. *Id*. The standard of review for conclusions of law is whether they are correct. *Id*. We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Id*.

A party who challenges the legal sufficiency of the evidence to support an issue on which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). When considering a legal sufficiency challenge after a bench trial, we view the evidence in the light most favorable to the trial court's findings, "credit[ing] favorable evidence if reasonable [fact finders] could, and disregard[ing] contrary evidence unless reasonable [fact finders] could not." *Horner*, 392 S.W.3d at 324 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We must indulge every reasonable inference that would support the trial court's findings. *City of Keller*, 168 S.W.3d at 822. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the decision under review." *Id*. at 827.

6

### B. Applicable Law

### 1. Easement by Estoppel

"The doctrine of easement by estoppel holds that the owner of the alleged servient estate may be estopped to deny the existence of an easement by making representations that have been acted upon by the owner of alleged dominant estate." *Ingham v. O'Block*, 351 S.W.3d 96, 100 (Tex. App.—San Antonio 2011, review denied) (quoting *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.—San Antonio 1996, writ denied)). Three elements are necessary for the creation of an easement by estoppel: (1) a representation communicated, either by word or action, to the promisee; (2) the communication was believed; and (3) the promisee relied on the communication. *Id.* These elements apply at the time the communication creating the alleged easement is made. *Holden*, 929 S.W.2d at 131. An easement by estoppel, once created, is binding upon a successor in title if reliance upon the existence of the easement continues. *Id.*

The gravity of a judicial means of acquiring an interest in land of another solely by parol evidence requires that equitable estoppel be strictly applied. *Horner*, 397 S.W.3d at 325. The estoppel should be certain, precise, and clear. *Id.* Texas case law supports the notion that for easements, the doctrine of equitable estoppel, or estoppel in pais as it is sometimes called, operates as an exception to the statute of frauds, which requires a writing for all transactions involving land, to prevent injustice and to protect innocent parties from fraud. *See Scott v. Cannon*, 959 S.W.2d 712, 720 (Tex. App.—Austin 1998, pet. denied) (citing *Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex. 1979); *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex. 1962)).

7

The doctrine of easement by estoppel is not applied as strictly as the doctrine of implied easement. *Id.* Being an equitable doctrine, it has not been clearly defined and its application must depend on the unique facts of each case. *Id.*

### C. Discussion

In order for the LaBordes to establish their entitlement to an easement by estoppel, they had to meet three elements.

### 1. Representation Communicated by Word or Action

Cores alleges in his brief that there was no evidence of any act of reliance prior to 2004 by the LaBorde property. We disagree.

To establish the first element of easement by estoppel, the LaBordes must show a representation was communicated, either by word or action, to the promisee. *Ingham*, 351 S.W.3d at 100. "It is well-settled that estoppel may arise from conduct or from a failure to act." *Wallace v. McKinzie*, 869 S.W.2d 592, 596 (Tex. App.—Amarillo 1993, writ denied).

During the bench trial, both parties put on deposition testimony from two members of the Brown family and a prior owner of the LaBorde property. Schauer testified that she believed the original families (the Brown and Francis families) would allow access to the properties on any of the surrounding roads. She also stated that the easement road from Dam Road had been used by her family in the past to access the cattle pens on the LaBorde property. Schauer explained that she had previously owned the Cores property, but traded land with her aunt and that the initial easement went through the property.[4] Schauer testified that no prior owners of the Cores property had restricted use of the

---

[4] Testimony showed that when Schauer and Eckols traded land, they re-located the easement road to its current location along the property line, rather than running through the now Cores property.

easement road to any of the landowners and all the prior owners of the LaBorde property had used the easement road without any issue.

Connell testified that her two relatives had switched properties and created the new location of the current easement. Connell had leased an acre of her land to the LaBordes' so they could continue to use the easement road after the dispute with Cores began. Connell agreed that wording in a document creating the easement for the southern landlocked properties did not include the LaBorde property. However, Connell also agreed that the Brown and Francis families had used the easement road to access the LaBorde property in the past. She also stated that the Browns continued to use the easement road after Francis sold his property to Jackson and that she was not aware of any complaints regarding use of the easement road prior to the LaBordes' purchase.

Jackson also testified that he spoke to the Schauer family regarding the cattle pens and was told he could use the easement road. He stated they told him the easement road had "been used for years" and whoever leased the LaBorde property had been allowed to use the road. Jackson explained that he replaced the cattle pens within sixty days of purchasing the LaBorde property and would enter his land through a gate off the easement road. Jackson had also allowed the Schauers to take gravel off the LaBorde property for maintenance and repair of the easement road. Jackson did not believe there had been complaints about the use of the easement road, except one time when Cores told Jackson he could not use the gate to get to the easement road.

The trial court's findings of facts found:

13. Joy Gail Brown Schauer and Rebecca Ann Connell are sisters and members of the Brown family. Both Ms. Schauer and Ms. Connell testified at trial. The Court finds the testimony of these witnesses to be credible and to have personal knowledge of the events they testified to.

. . . .

15. In 1979, the Cattle Pens and LaBorde Property were regularly accessed by a road that crossed the Cores Property (the "Easement Road"). At some point the Easement Road was relocated, but has always run over the Cores Property from Dam Road to the LaBorde Property.

16. At the time that the Single Tract was divided in 1979, the Brown family believed that the Francis family would be able to continue to use the Easement Road in order to access the Cattle Pens and the LaBorde Property.

. . . .

18. Between 1979 and 2004, while the Francis family owned the LaBorde Property, the Easement Road was regularly and openly used to access the LaBorde Property, particularly the Cattle Pens, with no objection from the owner of the Cores Property.

. . . .

The findings of law stated:

6. The LaBordes have established, by a preponderance of the evidence, the first element of easement by estoppel. For more than 30 years the owners of the Cores Property did not challenge the open and obvious usage of the Easement Road to access the LaBorde Property. The owners of the Cores Property thus engaged in representations by their conduct.

Because Cores challenges the legal sufficiency of the evidence to support an issue on which he did not have the burden of proof at trial, he must demonstrate that there is no evidence to support the adverse finding. *Croucher*, 660 S.W.2d at 58. However, the testimony presented shows factual evidence of prior use and reliance that support the trial

10

court's findings. Therefore, we agree with the trial court's finding that the LaBordes' established the first element.

### 2. Communication was Believed

Cores next alleges as a sub-issue that Jackson's reliance was not based upon an affirmative statement by an owner of the Cores property.

The second element the LaBordes were required to establish was that the communication was believed by the promisee. *Ingham*, 351 S.W.3d at 100. An easement by estoppel, once created, is binding upon a successor in title if reliance upon the existence of the easement continues. *Id.*

Jackson's testimony at trial also explained that he had an interest when he purchased the LaBorde property in re-building the cattle pens, located in the southwest corner of his property. When he spoke to members of the Schauer family[5], Jackson believed, based on representations of past use, that he was entitled to use the easement road. Jackson rebuilt the cattle pens, openly using the easement road to move supplies, without any objection from the surrounding landowners. Jackson's use of the easement road was prior to Cores's purchase of his land.

In relation to Jackson, the trial court's findings stated:

19.   Rafe Jackson purchased the LaBorde Property from the Francis family in 2004. Mr. Jackson testified at trial. The Court finds Mr. Jackson's testimony to be credible.

. . . .

---

[5] While Jackson did not speak to Eckols herself, he did speak to members of the Schauer family, who previously had owned the Cores land. There was no objection by Eckols to Jackson's use of the easement road testified to.

21.    When Rafe Jackson purchased the LaBorde Property, he believed the owner of the LaBorde Property had a right to use the Easement Road to access the LaBorde Property, particularly the Cattle Pens.

. . . .

23.    Rafe Jackson rebuilt the Cattle Pens in reliance upon what he believed to be his right to use the Easement Road.

. . . .

36.    Barbara LaBorde testified at trial. The Court finds her testimony to be credible.

. . . .

38.    At the time that LaBorde Properties, L.P. purchased the LaBorde Property, the LaBordes believed that they had a right to enter the LaBorde Property by way of the Easement Road, including to access the Cattle Pens.

The trial court's findings of law state:

7.    The LaBordes have established, by a preponderance of the evidence, the second element of easement by estoppel. The owners of the LaBorde Property, including the Francis Family, Rafe Jackson, and the LaBordes, reasonably believed that they had a right to use the Easement Road to access the LaBorde Property.

Again, Cores must show there was no evidence to support the trial court's finding that the second element was met by the LaBordes. *See Croucher*, 660 S.W.2d at 58. The evidence presented by Jackson supports the trial court's findings that the communication was believed by Jackson. In addition, the information Jackson received was relayed to him by a prior owner of the Cores property. The LaBordes believed they were entitled to use the Easement Road based on the prior use by Jackson and prior owners. We again agree with the trial court that the LaBordes established the second element.

   **3.    Communication was Relied On**

12

Cores's third sub-issue states that the alleged acts of reliance during the LaBorde period of ownership were not a result of specific affirmative representation.

The third element the LaBordes were required to establish was that the communication was relied on by the promisee. *Ingham*, 351 S.W.3d at 100. However, as stated above, an easement runs to the successors in title once it is created. *See id.* The trial court's findings of fact stated:

24. While Rafe Jackson was rebuilding the Cattle Pens, including by openly bringing materials to the LaBorde Property via the Easement Road, no one challenged his right to do so.

25. During the time that he owned the LaBorde Property, Rafe Jackson openly used the Easement Road to access the LaBorde Property, including the Cattle Pens.

26. During the time he owned the LaBorde Property, Rafe Jackson permitted gravel from the LaBorde Property to be used to repair potholes in the Easement Road. Rafe Jackson did so relying upon what he believed to be his right to use the Easement Road.

. . . .

30. During the time that Rafe Jackson owned the LaBorde Property, he never received any complaints from Cores about his regular and open use of the Easement Road, and Cores never made such complaints.

31. Cores knew at the time that he purchased the Cores Property that the owners of the LaBorde Property had been using the Easement Road to access the LaBorde Property, particularly the Cattle Pens. Among other things, Cores knew that the Easement Road had been and was being used regularly to move cattle onto and off of the LaBorde Property.

. . . .

34. During the time that Cores has owned the Cores Property, he has not personally spent any money or resources to repair or maintain the Easement Road.

. . . .

39. The LaBordes purchased the LaBorde Property relying on the use of the Easement Road to access the LaBorde Property, including the Cattle Pens.

. . . .

41. The LaBordes purchased the LaBorde Property relying upon their ability to use the Easement Road to access the Cattle Pens and the Modular Home.

. . . .

43. Cores did not dispute that the LaBorde Property could be accessed by the Easement Road until late in 2010 when he became upset that the LaBordes were constructing the Modular Home on the LaBorde Property but within sight of the Cores Property.

. . . .

46. The evidence clearly established that since before 1979 until 2010, no one (including no owner of the Cores Property) had ever challenged the right of any person to access the LaBorde Property by crossing the Cores Property via the Easement Road, despite the fact that the Easement Road was openly used for such purpose.

The trial court's conclusions of law stated:

8. The LaBordes have established, by a preponderance of the evidence, the third element of easement by estoppel. The owners of the LaBorde Property, including the Francis Family, Rafe Jackson, and the LaBordes, made numerous decisions in reliance upon their ability to use the Easement Road, including their decisions to purchase the property and to use, and in some cases improve, the Cattle Pens.

Based on the testimony presented and the trial court's findings, the evidence supported the LaBordes assertion that the easement by estoppel was created due to the reliance of past owners of the property and their actions. The LaBordes acted in a manner that followed the actions of Jackson and the Francis family. Cores cannot show there was no evidence to support the trial court's finding that the third element was met by the

14

LaBordes. *See Croucher*, 660 S.W.2d at 58. We again agree with the trial court that the LaBordes established the third element of easement by estoppel.

### D. Conclusion

In order to show lack of sufficient evidence, Cores had to show there was no evidence to support the trial court's findings in favor of the LaBordes. However, the trial court found factually:

35. During the time that Rafe Jackson owned the LaBore Property and Cores owned the Cores Property, Cores did not challenge Rafe Jackson's right to use the Easement Road to access the LaBorde Property. Cores testified at trial. The Court finds Cores's testimony that he was generally unaware of Mr. Jackson's use of the Easement Road not to be credible, and finds Cores's testimony generally not credible when it conflicted with the testimony of other witnesses.

. . . .

44. The evidence clearly established that since before 1979, up until Cores brought this lawsuit, the Easement Road crossing the Cores Property has been used openly and regularly to access the LaBorde Property, including the Cattle Pens.

Legally, the trial court found:

9. Accordingly, LaBorde Properties, L.P. established by a preponderance of the evidence all the essential elements of its declaratory judgment claim. LaBorde Properties, L.P. has the right to an easement by estoppel over that part of the Easement Road extending from Dam Road roughly westward to the gate entering LaBorde Properties, L.P.'s land, as set forth on the plan and legal description. . . .

Because we must view the evidence in the light most favorable to the trial court's findings and indulge every reasonable inference to support the findings, we hold that the evidence was sufficient to support the trial court's extensive findings of fact and conclusions of law. *See Horner*, 392 S.W.3d at 324; *City of Keller*, 168 S.W.3d at 822. We overrule Cores's first issue.

15

## IV.     COUNTERCLAIMS

By his third issue, Cores alleges that the trial court erred in entering a declaratory judgment that was duplicative of claims already before the court.

### A.     Applicable Law

"Texas's Declaratory Judgments Act ("the Act") is based upon the Uniform Declaratory Judgments Act." *Garden Oaks Maintenance Organization v. Chang*, 542 S.W.3d 117, 123 (Tex. App.—Houston [14th Dist.] 2017, no pet.).  The Act's purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.  TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West, Westlaw through 2017 1st C.S.).  The Act is to be liberally construed and administered.  *Id.*  Under the Act:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

*Id.* § 37.004(a) (West, Westlaw through 2017 1st C.S.).  A court of record within its jurisdiction has power to declare rights, status, or other legal relations whether or not further relief is or could be claimed.  *Id.* § 37.003(a) (West, Westlaw through 2017 1st C.S.).

Although the Act generally is not available to settle disputes already pending before a court, the Supreme Court of Texas has recognized that "in certain instances, . . . a defensive declaratory judgment may present issues beyond those raised by the plaintiff," such as where "there is an ongoing and continuing relationship."  *Garden Oaks*, 542 S.W.3d at 123 (quoting *BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838, 841–42 (Tex.

16

1990)); *Drexel Corp. v. Edgewood Dev., Ltd.*, 417 S.W.3d 672, 678 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("[I]n certain instances, a 'defensive' declaratory judgment will survive a nonsuit when there are continuing obligations between the parties."). To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even if the plaintiff abandons his cause of action or fails to establish it. *Garden Oaks*, 542 S.W.3d at 124.

## B.    Discussion

In response to Cores's allegation that the LaBordes' declaratory judgment was duplicitous of claims before the court, LaBorde responds by stating that they were required to assert a counterclaim for declaratory judgment in order to receive affirmative relief.

In Cores's first amended petition, he asked for a temporary and permanent injunction to deny the LaBordes from using the Easement Road. In addition, Cores requested attorney's fees. In the LaBordes' first amended answer and counterclaim, they generally deny the allegations set forth in Cores's petition. The LaBordes then raise a counterclaim in which they seek a declaratory judgment allowing use of the Easement Road under the theories of easement by estoppel or implied easement.

Here, even if Cores dismissed his case, because the LaBordes raised an issue beyond those raised by Cores, the LaBordes would be entitled to a ruling on their request for an easement by estoppel. *See Garden Oaks*, 542 S.W.3d at 123. Therefore, we hold the trial court did not err in ruling on the LaBordes' request for a declaratory judgment. We overrule Cores's third issue.

## V. CONCLUSION

We affirm the judgment of the trial court.


GINA M. BENAVIDES,
Justice


Delivered and filed the
21st day of June, 2018.