NO. 07-08-0299-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 14, 2010

_____


STEPHEN E. MARTIN, APPELLANT

v.

GENE OLIVER "BUDDY" COCKRELL, APPELLEE

_____


FROM THE 31ST DISTRICT COURT OF GRAY COUNTY;

NO. 34,879; HONORABLE STEVEN R. EMMERT, JUDGE

_____


Before CAMPBELL, HANCOCK and PIRTLE, JJ.


**OPINION**

Appellant, Stephen E. Martin, appeals from a judgment rendered in favor of Appellee, Gene Oliver "Buddy" Cockrell, following a jury trial of Cockrell's declaratory judgment action seeking to establish an equitable easement by estoppel across Martin's property. By seven issues, Martin contends (1) the evidence is legally insufficient, (2) the evidence is factually insufficient to support a finding of an easement in the pasture road across his property, (3) Cockrell failed to submit or request jury questions on one

or more essential elements of his easement by estoppel claim, (4) the Court's charge failed to properly instruct the jury on the nature and scope of the easement claimed, (5) the trial court improperly expanded the scope of the easement, (6) the jury erred in failing to award him damages for Cockrell's trespass, and (7) the trial court erred in failing to award him recovery of attorney's fees. We reverse and render in part and affirm in part.

## Background

At issue in this appeal is a pasture road located in Gray County, Texas, that begins at the southern tip of County Road 24 and traverses Martin's property south through Sections 113 and 84, Block M-2 of the BS&F Survey (Survey) to the northern middle section of Cockrell's property, Sections 114 and 83, Block M-2 of the Survey. Following a jury trial, the trial court issued a judgment awarding Cockrell, his heirs, successors and assigns, a permanent equitable easement of ingress and egress over Martin's property for agricultural purposes.

### The Joneses and Ingrums

At trial, Paul Jones testified his family built the pasture road on Sections 113 and 84 of Block M-2 of the Survey (the "Jones property") from a cow trail in the late 1930s or early 1940s. The Jones family used the pasture road to tend to their cattle. In 1941, the Ingrums purchased Sections 114 and 83 of Block M-2 of the Survey (the "Ingrum

2

property").  The northern border of the Ingrum property abutted the southern border of the Jones property.

From the early 1940s, Larry Ingrum testified the Ingrums usually used the pasture road on the Jones property to exit their property and travel north to County Road 24.  They placed cattle in the pasture nearest to the Jones property so they wouldn't have to ride two pastures.  The Ingrums would typically enter their property from the west side, come down through the middle tending their cattle and then exit their property using the pasture road on the Jones property.  At some indeterminate time, the Ingrums built some cattle pens and a couple of windmills in the middle pasture and used the pasture road on the Jones property to service the windmills.

Ingrum testified there was a gentlemen's agreement between his family and the Joneses permitting the Ingrums to enter and exit their property over the pasture road on the Jones property.  There was no written agreement or contract.  The Ingrums used the pasture road on the Jones property "by friendly neighbourly permission"--"[b]oth sides just did what they did." Ingrum further testified they "never claimed to have a legal right to use the road" and agreed that their right to use the road was "consistent with friendly permission."

Jones testified his family didn't have "a problem with [the Ingrums] using the road," the two families were "just friends"---"friendly use of the road."  He testified "[n]obody ever asked permission to use the road and permission was never given." Jones testified that on two different occasions, one of Ingrum's hands pulled off the road

onto the pasture and damaged his grass. He testified he told the Ingrums he wanted it stopped and it stopped. He also testified his family "never gave anyone an easement to use the road."

**The Martins and Cockrells**

In 2000, Alice Ingrum Gray inherited the Ingrum property. She had two sons, Gene Oliver "Buddy" Cockrell and Lee Cockrell, Alice's guardian. Also, in 2000, Martin purchased the Jones property from Paul Jones.[1]

From 2001 to 2006, Martin leased the Ingrum property from May to October of each year for grazing purposes. During the lease periods, between 2003 and 2006, Martin's wife, Susan, cared for their cattle on the Ingrum property approximately three times a week. Because the Martins were not living on the Martin property at the time, Susan would enter and exit the Ingrum property via Gray County Road 22 off Highway 152, or she would cross the Ingrum property and exit on County Road 26. She testified it was unnecessary for her to use the pasture road in dispute to care for their cattle on the Ingrum property. When accessing the north middle pasture on the Ingrum's property, the difference between using the disputed pasture road and Ingrum's entry roads was simply a matter of convenience, rather than necessity. The distance required to travel to access the north middle of the Ingrum property from Ingrum's road was

---

[1]Hereinafter, the "Jones Property" will be referred to as the "Martin Property."

4

approximately eight miles, whereas access via the disputed pasture road was approximately five miles.

Susan also testified the Ingrum roads were "perfectly good" and provided access to the Ingrum windmills and caliche pit. If the Ingrum roads were graded, she testified they could drive large water testing trucks or windmill service trucks over the roads. While caring for the cattle on the Ingrum property, Susan drove a one-ton pickup truck with a sixteen foot gooseneck trailer.

Between 2000 and 2002, Martin did not observe anyone, or evidence of anyone, traveling over the disputed pasture road. In 2002, however, Martin gave Gray County permission to use the pasture road to haul caliche dug from a pit on the Ingrum property.[2] Gray County Commissioner Joe Wheeley testified Martin gave the county permission to haul caliche across the pasture road via a "gentlemen's agreement," not a formal easement.

In order to use the pasture road year-round to haul caliche, with Martin's permission, the county applied caliche to the road.[3] For their convenience, the county also installed a culvert or cattle guard where the Ingrum property adjoined the Martin property and, to protect the county's caliche, Martin installed a combination lock at the

---

[2]Lee Cockrell, as Alice Ingrum Gray's guardian, had entered into an agreement to sell caliche to Gray County for fifty cents a yard.

[3]Otherwise, rain would make the pasture road nearly impassable even for a pickup truck.

point of entry to the Ingrum property from the pasture road in 2002. When the county ceased hauling caliche in 2006, the county removed the culvert or cattle guard, removed the caliche from a portion of the pasture road, and plowed and seeded the roadway to return the pasture road to its original condition per Martin's request.

In November 2006, Cockrell asked Martin for the combination to the locked gate between the Ingrum and Martin properties in order to check the windmills located in Ingrum's middle pasture. Martin gave Cockrell the combination. Three days later, Marshall Hopkins began parking heavy equipment on Martin's property intending to haul caliche out of the Ingrum pit to satisfy his requirements for a local job for Teja Feeders. When Martin questioned Hopkins's use of the pasture road, Hopkins told Martin that Cockrell had given him permission to haul the caliche over the pasture road. Martin refused to allow Hopkins use of the road and Hopkins removed his equipment. Days later, Martin installed a combination lock on the gate located at the juncture of County Road 24 and the pasture road on his property. He did not give this combination to Cockrell.

In April 2007, Cockrell agreed to settle his mother's estate with his brother. As a result of the settlement, Cockrell received the Ingrum Property.[4] Shortly thereafter,

---

[4]On July 3, 2007, the Ingrum property was deeded to Cockrell by Jerry G. Davis, Independent Administrator of the Estate of Alice B. Ingrum Gray, Deceased. Cockrell testified that, when negotiating a settlement of his mother's estate with his brother, he took into account the county's contract to haul caliche which paid ten thousand dollars a year and use of the pasture road over the Martin property. Hereinafter, the "Ingrum Property" will be referred to as the "Cockrell Property."

Cockrell informed Martin that he would not lease his pasture to Martin because he was giving his middle pasture a rest.[5] Later, Cockrell called Martin and asked for the combination to the lock on the gate where County Road 24 met the pasture road on Martin's property. Martin agreed to meet Cockrell at the gate and let him in and out. Cockrell responded that the arrangement was unworkable. In June or July 2007, Cockrell again approached Martin in order to obtain the combination to the locked gate and Martin refused to give Cockrell the combination.[6] Shortly thereafter, Cockrell filed suit to obtain use of the pasture road.

### Court Proceedings

On August 17, 2007, Cockrell filed a petition seeking a temporary injunction restraining Martin from denying him access to the Cockrell property over the pasture road on Martin's property. After a hearing on September 14, 2007, the trial court granted a temporary injunction enjoining Martin from restricting Cockrell's use of the pasture road for agricultural purposes.

---

[5]Cockrell subsequently entered into grazing leases with a relative who paid more for the leases than Martin was paying.

[6]Mike Voss of Mike's Water Well Service testified he did his first job for Cockrell in early spring 2007. He testified he repaired three of Cockrell's windmills, all in bad shape. He further testified the pasture road facilitates work on the windmills and was "the only entrance that we had with our equipment to get in there." Susan Martin testified there were other roads on the Ingrum property from where access could be had to the windmills although it might be necessary to blade them to accommodate windmill servicing trucks.

7

After the temporary restraining order, Martin gave Cockrell the combination to the lock installed on Martin's gate between County Road 24 and the pasture road. Thereafter, Cockrell and Hopkins traversed the pasture road with heavy equipment to remove caliche from the pit to shore up a windmill on the Cockrell property. In the process, they drove off the pasture road into Martin's pasture.

On January 16, 2008, Martin counterclaimed against Cockrell for possession of the pasture road, an order barring Cockrell from using the pasture road, trespass, and damages to repair his pasture. On January 31, 2008, Cockrell filed his first amended petition asserting a permanent equitable easement or easement by estoppel permitting him to use the pasture road on Martin's property. On February 11, 2008, Cockrell also filed a supplemental petition requesting that the trial court declare him an equitable easement over the pasture road pursuant to the Texas Declaratory Judgment Act and award him recovery of reasonable attorney's fees.

Following a two-day trial, the jury found that Cockrell had an equitable easement to use the pasture road, Cockrell trespassed on Martin's property when Hopkins's equipment was driven outside the pasture road, Cockrell's use of a passageway alongside the pasture road was not privileged, and Martin was entitled to no damages for Cockrell's trespass. On June 12, 2008, the trial court entered judgment granting Cockrell a permanent easement of ingress and egress over the pasture road on Martin's property for agricultural purposes and that Martin take nothing as to his counterclaim. Martin gave timely notice of appeal.

8

**Discussion**

## I. Legal Sufficiency

### A. Standard of Review

In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the challenged finding, indulge every reasonable inference to support it; *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005), and credit favorable evidence if reasonable jurors could while disregarding contrary evidence unless reasonable jurors could not. *Id.* at 827. A challenge to legal sufficiency will be sustained when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla.[7] *Id.* at 810. In addition, so long as the evidence falls within the zone of reasonable disagreement, we may not invade the fact-finding role of the jurors, who alone determine the credibility of witnesses, the weight to be given their testimony, and whether to accept or reject all or part of their testimony. *Wilson*, 168 S.W.3d at 822. Generally, if an appellate court sustains a "no evidence" or "legal sufficiency" issue, the appellate court must reverse and also render judgment. *See In re State ex rel. K.D.C.,* 78 S.W.3d 543, 551 (Tex.App.--Amarillo 2002, no pet.) (citing *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex. 1986)).

---

[7]Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004).

## B. Easement by Estoppel

The doctrine of equitable estoppel or estoppel *in pais* is an exception to the statute of frauds;[8] *Cleaver v. Cundiff*, 203 S.W.3d 373, 375 (Tex.App.--Eastland 2006, no pet.), and, "[b]eing a creature of equity, it seeks to prevent injustice and to protect innocent parties from fraud." *Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex. 1979). Under this doctrine, a landowner may be estopped from denying the existence of an easement created by "representations" upon which another has detrimentally relied. *Cleaver,* 203 S.W.3d at 375. The doctrine was first discussed in Texas jurisprudence more than 125 years ago when the Supreme Court articulated the rationale for the doctrine of easement by estoppel:

> The owner of land may create an easement by a parol agreement or representation which has been so acted on by others as to create an estoppel *en pais*. As where he has by parol agreement granted a right to such easement in his land, upon the faith of which the other party has expended moneys which will be lost and valueless if the right to enjoy such easement is revoked, equity has enjoined the owner of the first estate from preventing the use of it.

*F.J. Harrison & Co. v. Boring & Kennard*, 44 Tex. 255, 267-68 (1875).

---

[8]Section 26.01 of the Texas Business and Commerce Code provides that a promise or agreement for the sale of real estate is not enforceable unless the promise or agreement, or a memorandum of it, is in writing and signed by the person charged with the promise or agreement or by someone lawfully authorized to sign for him. Tex. Bus. & Com. Code Ann. § 26.01 (Vernon 2009). *See* Tex. Prop. Code Ann. § 5.021 (Vernon 2004).

Essentially, estoppel *in pais* holds that the owner of a servient estate may be estopped to deny the existence of an easement[9] by making representations that have been acted upon by the owner of the dominant estate to his detriment; *Storms*, 579 S.W.2d at 451, and "is grounded on the condition that justice forbids one to gainsay his own acts or assertions." *Wallace v. McKinzie*, 869 S.W.2d 592, 595 (Tex.App.--Amarillo 1993, writ denied). Each case in which equitable estoppel is sought to be applied must rest upon its own facts. *Vrazel v. Skrabanek*, 725 S.W.2d 709, 711 (Tex. 1987).[10]

The gravity of a judicial means of acquiring an interest in land of another solely by parol requires that equitable estoppel be strictly applied; *Allen v. Allen*, 280 S.W.3d 366, 381 (Tex.App.--Amarillo 2008, pet. denied) (citing *Moore County v. Bergner*, 526 S.W.2d 702, 706 (Tex.Civ.App.--Amarillo 1975, no writ)), and the estoppel "should be certain, precise and clear." *Id.* (citing *McAnally v. Friends of WCC, Inc.,* 113 S.W.3d 875, 879 (Tex.App.--Dallas 2003, no pet.)).

---

[9]An easement confers on one person the right to use the land of another for a specific purpose; *Hubert v. Davis*, 170 S.W.3d 706, 710 (Tex.App.--Tyler 2005, no pet.), but does not convey title to the property. *South Plains Switching, Ltd., Co. v. BNSF Railway Co.,* 255 S.W.3d 690, 707 (Tex.App.--Amarillo 2008, pet. denied). *See Stephen F. Austin State University v. Flynn*, 228 S.W.3d 653, 658 (Tex. 2006). It is a burden on one estate, the servient estate, for the benefit of another, the dominant estate. *Miller v. Babb*, 263 S.W.253, 254 (Tex. Comm'n App. 1924, judgm't adopted).

[10]Application of the doctrine has been "rare and nebulous" in circumstances other than the three circumstances described by the Texas Supreme Court in *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209-10 (Tex. 1958): (1) a dedication of a street, alley or square; (2) an owner selling land with reference to a map or plat; and (3) a seller of land who allows its purchaser to expend money on an alleged "servient" estate. *Id.* *See Scott v. Cannon,* 959 S.W.2d 712, 720 (Tex.App.--Austin 1998, pet. denied). None of these circumstances exist here.

11

Three elements are necessary to create an easement by estoppel: (1) a representation of the easement communicated, either by words or action, to the promisee; (2) the communication was believed; and (3) the promisee detrimentally relied on the communication. *Storms*, 579 S.W.2d at 452. *See Allen*, 280 S.W.2d at 381; *McKinzie,* 869 S.W.2d at 595.[11] Further, once created, an easement by estoppel is binding on the successors in title to the servient estate if reliance upon the existing easement continues. *Cleaver,* 203 S.W.3d at 375; *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex.App.--San Antonio 1996, writ denied).

To establish the first element, Cockrell relies upon the legal fiction of representation by silence. "The principle of estoppel by silence arises where a person is under a duty to another to speak, but refrains from doing so and thereby leads the other to act in reliance on a mistaken understanding of the facts. The duty to speak does not arise until the silent party is himself aware of the facts." *Storms*, 579 S.W.2d at 452.

---

[11]These elements apply at the time the communication creating the alleged easement is made. *Vinson v. Brown*, 80 S.W.3d 221, 229 (Tex.App.--Austin 2002, no pet.) (citing *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.,* 750 S.W.2d 868, 872 (Tex.App.--Austin 1988, writ denied)).

## C. The Pasture Road

At trial, Cockrell asserted[12] the Ingrums obtained an easement by estoppel over the pasture road due to Jones's silence and acquiescence in the Ingrums' use of the pasture road for approximately fifty-five years.[13]  And, after Jones transferred the property to Martin and Cockrell came to own the Ingrum property, he asserted that he succeeded to the Ingrum easement by estoppel and/or, in the alternative, obtained an easement by estoppel over the pasture road via Martin's silence and acquiescence in his subsequent use of the pasture road.

### 1.  Ingrum and Jones

Because Cockrell relies on the silence and acquiescence of the Jones family in establishing an easement by estoppel in favor of his predecessors in title, the Ingrums, we will first consider whether Cockrell adduced any evidence that the Joneses had a duty to speak.  That is, did the Joneses owe a duty to advise the Ingrums that they were permissive users of the pasture road?  We will then consider whether there is any evidence the Joneses made any representation of an easement to the Ingrums that was believed and acted on by the Ingrums to their detriment.

---

[12]Cockrell had the burden at trial to prove an easement by implication.  *See Miller v. Elliot,* 94 S.W.3d 38, 43 (Tex.App.--Tyler 2002, pet. denied).

[13]Cockrell did not assert at trial there was any prior common ownership of the Ingrum and Jones properties or that any vendor/vendee relationship ever existed between the owners of the properties. Neither is there any evidence of record that any fraud, actual or constructive, was perpetrated by any owner of either property.

13

Having reviewed the entire record, we find no evidence to establish that the Joneses had any duty to make such a representation to the Ingrums.  Rather, all of the evidence adduced at trial indicates that both the Ingrums and the Joneses understood that the Ingrums' use of the pasture road was by "friendly neighbourly permission."

Neither is there any evidence of extenuating circumstances that would establish such a duty on behalf of the Joneses.  The record is devoid of any evidence establishing the Ingrums expended any money or effort on the construction or upkeep of the pasture road[14] or, relying on the pasture road, made any substantial or permanent improvements to their property of which the Joneses were aware.[15]  Furthermore, distinguishing this case from other cases involving landlocked tracts,[16] here there were

[14]"The doctrine of estoppel *in pais* has been applied when the seller allows the purchaser to expend money on the 'servient' tract, as for example a drainage ditch across the grantor's land, or a house or other structure which encroaches on the land of the 'servient' estate*'; Drye,* 364 S.W.2d at 210.  *See Storms*, 579 S.W.2d at 453; *Murphy v. Long*, 170 S.W.3d 621, 628 (Tex.App.--El Paso 2005, pet. denied).

[15]Where there is little or no evidence that the owner of the "servient" estate was aware that the alleged owners of a "dominant" estate made any substantial improvements to their property, there is no duty to speak.  *Wilson v. McGuffin*, 749 S.W.2d 606, 611 (Tex.App.--Corpus Christi 1988, writ denied).  Here, there was no testimony by Jones or Ingrum that Jones was aware of any improvements made by the Ingrums on their property.

[16]*See, e.g.*, *Cundiff*, 203 S.W.3d at 376 (nearly one hundred years of use and landlocked claimant built and maintained the road and made improvements on his property); *Weidenfeller*, 929 S.W.2d 124, 131 (Tex.App.--San Antonio 1996, writ denied) (more than fifty years and landlocked claimant contributed to road maintenance, built a large house on the property and presented evidence of significant amounts of labor and money being expended to improve claimant's property); *Russ v. Womack,* No. 13-08-0002-CV, 2008 Tex. App. LEXIS 8361, *12 (Tex.App.--Corpus Christi Nov. 6 2008, no pet.) (not designated for publication) (twelve years during which landlocked families built homes and made improvements without objection); *Thompson v. Houk*, No. 12-04-00315-CV, 2005 Tex. App. LEXIS 6875, at *8 (Tex.App.—Tyler Aug. 24, 2005, no pet.) (not designated for publication) (easement by estoppel found where, for at least twenty years, landlocked claimants used access, moved in a mobile home and established permanent residence); *Russell v. Rawls*, No. 08-00-0546-CV, 2003 Tex. App. LEXIS 2369, at *11-12 (Tex.App.--El

14

alternative means of ingress and egress to the Ingrum or Cockrell property without use of the disputed pasture road.[17]  In short, there is no evidence that the Joneses were aware of any facts that would give rise to a duty to advise the Ingrums that they were permissive users of the pasture road in order to avoid the imposition of an easement by estoppel.

Moreover, even if the Joneses had a duty to speak and their silence or acquiescence constituted a representation, there is no evidence the Ingrums "believed" such a representation.  To the contrary, Ingrum's testimony establishes he "believed" his family used the pasture road with the "neighbourly permission" of the Joneses. Neither is there any evidence that the Ingrums relied to their detriment on any representation, silent or spoken, by the Joneses.[18]

---

Paso March 20, 2003, no pet.) (not designated for publication) (finding permissive, acquiescent conduct constituted representation where, for more than ten years, owner of landlocked track traveled road to care for self and landowner of the servient estate who was in failing health).

[17]"Where the landowners had another method of access to their properties but used a second roadway as a matter of convenience to reach their property, there can be no implied easement over the second roadway because there is no necessity."  *Duff v. Mathews*, 158 Tex. 333, 311 S.W.2d 637, 643 (1958). *See Adams v. Norsworthy Ranch, Ltd.*, 975 S.W.2d 424, 429 (Tex.App.--Austin 1998, no pet.). Moreover, "impassibility of a [second] road gives a party no right to an easement."  *Duff,* 311 S.W.2d at 643.  *See Roberts v. Allison*, 836 S.W.2d 185, 188 (Tex.App.--Tyler 1992, writ denied) (impassability of alternative route not notice of an easement claim); *Sentell v. Williamson County, Texas*, 801 S.W.2d 220, 223 (Tex.App.--Austin 1990, no pet.) (no matter that alternate route is "too steep or too narrow, or that other and like difficulties exist").  "When one has access to a part of his tract of land by way of travel over his own property, this, as a matter of law, is a better and more direct route than one which burdens an adjacent landowner."  *Id.*

[18]While the Ingrums erected some cattle pens and a couple of windmills on their property, there is no evidence they were built in reliance on use of the pasture road.  The improvements were consistent with the Ingrums overall use of their property as a cattle ranch.  Given there were alternative means of access

15

Cockrell contends that the *McKinzie* case stands for the proposition that the doctrine of equitable estoppel requires no more than mere silence when one who, by his silence, induces another to act in a particular manner and then attempts to adopt an inconsistent position that would cause loss or injury to the relying party. Cockrell's reliance on the *McKinzie* case is, however, misplaced. In *McKinzie*, there was some evidence that the relying party "believed" the landowner's silence was a representation of an easement, i.e., McKinzie filed an affidavit in the deed records of Kent County claiming an easement over the roads on Wallace's property for the purpose of ingress and egress to his landlocked property. 869 S.W.2d at 595. In addition, McKinzie testified that, after a conversation with Wallace, he believed he had an easement and in reliance thereon maintained the access road and made improvements to his property. *Id.* Here, all the evidence is to the contrary, i.e., the Ingrums believed their use was permissive, did not construct or maintain the disputed pasture road and Cockrell adduced no evidence that the Ingrums relied on use of the road to make any substantial or permanent improvements to their property.

Accordingly, considering the evidence in the light most favorable to the jury's finding of an easement by estoppel while indulging every reasonable inference to

to the Ingrum property and the value of the improvements would not be lost or rendered valueless if the pasture road could not be used, evidence of the improvements represents less than a scintilla in support of detrimental reliance. In addition, the evidence at trial indicated the cattle pens had largely rotted and the windmills were in disrepair when Cockrell took ownership of the Ingrum property.

16

support it, we find the evidence offered in support of an easement by estoppel by virtue of the relationship between the Joneses and the Ingrums, does not exceed a scintilla.

### 2. Cockrell and Martin

Cockrell's evidence in support of an easement by estoppel due to any relationship between Cockrell and Martin is even more tenuous. Martin purchased the Jones property in 2000. From that point, Cockrell contends two fact scenarios gave rise to an easement by estoppel. One, from 2001 to 2006, Martin entered into a series of grazing leases with Lee Cockrell as Alice Ingrum Gray's guardian, where he used the disputed pasture road to access the Ingrum property and, two, from 2002 to 2006, Martin gave Gray County permission to haul caliche from the Cockrell property over the pasture road to County Road 24.

That Martin may have used a pasture road on his own property to care for his cattle grazing on the Ingrum property pursuant to a lease is of no moment. "[O]ne cannot be said to have an easement in lands, the fee simple to which is in himself." *Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622, 625 (1950).[19] A landlord/tenant relationship does not create a vendor/vendee relationship. *See Allison*, 836 S.W.2d at 188 ("[s]ince there was no prior common ownership of the tracts, no vendor/vendee relationship existed between the parties"). Furthermore, with respect to Gray County's

---

[19]Moreover, "[t]he use of a way over the land of another when the owner is also using the same is not such adverse possession as will serve as notice of a claim of right, for the reason that the same is not inconsistent with a license from the owner." *Othen*, 226 S.W.2d at 627.

use of the pasture road, Martin had a "gentlemen's agreement" with Gray County Commissioner Wheeley permitting the county to use the pasture road for a specific purpose. Martin's agreement with Wheeley could not have created an easement in favor of Cockrell. Therefore, neither of these two scenarios gave rise to an easement by estoppel.

In 2006, Cockrell received the combination to the lock between the Ingrum and Martin properties for the purpose of checking on his windmills. However, three days later, when Marshal Hopkins began parking his heavy equipment on Martin's property in anticipation of using the pasture road to haul caliche from the Ingrum property, Martin denied Hopkins use of the pasture road and days later installed a combination lock on the gate where County Road 24 met the pasture road at the entrance of his property. Further, in June or July 2007, after Cockrell obtained title to the Ingrum property, Martin refused to give Cockrell the combination to the lock.

Under the circumstances, Martin had no duty to speak and made no representation to Cockrell. Giving Cockrell the combination to the locked gate between the Ingrum and Martin properties was more in the nature of giving a license in real estate[20] rather than creating an easement. *See Machala v. Weems,* 56 S.W.3d 748, 760 (Tex.App.--Texarkana 2001, no pet.). Martin could have changed combinations at

---

[20]A license in real estate merely confers a privilege to do some act or acts upon the land without conveying any interest in or title to the land itself; *Samuelson v. Alvarado*, 847 S.W.2d 319, 323 (Tex.App.--El Paso 1993, no pet.), and is revocable at will. *Drye,* 364 S.W.2d at 203.

18

any time.  In addition, there is no evidence Martin had made any representation to Cockrell that would have required him to give Cockrell a new combination to the gate. Rather, the evidence shows that, only days later, Martin denied entry to Hopkins when he requested use of the pasture road to haul caliche from the pit located on the Cockrell's property and thereafter refused to give Cockrell the combination to the locked gate at the entrance of the pasture road off County Road 24.

In addition, like the relationship between the Joneses and the Ingrums, there was no evidence of common ownership of the tracts, no vendor/vendee relationship and no probative evidence of fraud, actual or constructive, perpetrated upon Cockrell.  Neither was there any evidence of misrepresentations or overreaching conduct by Martin.

Accordingly, we sustain Martin's first issue.  Because our finding pretermits issues two through five, we will next consider issues six and seven.

## II.  Nominal Damages

The jury found that Cockrell trespassed on Martin's property when Hopkins drove his equipment outside the pasture road, proximately causing damages to Martin's property.  The jury further found the use of a passageway alongside the pasture road was not privileged.  Nonetheless, in response to the question as to what sum of money, if paid now in cash, would fairly and reasonably compensate Martin for his damages, the jury answered: "$ - 0 - ."  In accordance with the jury's verdict, the trial judge ordered that Martin "take nothing" by virtue of his counterclaim against Cockrell.

Martin contends that because the jury found a trespass, and no privilege, he is entitled to "nominal damages" as a matter of law. Martin relies solely upon the case of *General Mills Restaurants, Inc. v. Texas Wings, Inc.,* 12 S.W.3d 827, 833 (Tex.App.-- Dallas 2000, no pet.), as support for his proposition of law. His reliance upon this authority is misplaced because *General Mills* arises in the procedural context of a no-evidence motion for summary judgment. There, the appellate court found that the trial court erred when it granted the appellee's no-evidence summary judgment based upon an absence of evidence of damages on appellee's claim.

Here, Martin's claim is essentially a contention that the jury's finding is not supported by the evidence, or is against the great weight and preponderance of the evidence. A review of the record, however, reveals that it is devoid of any evidence establishing that Martin expended any money or effort repairing any damages caused by Cockrell's vehicles or equipment being driven outside the pasture road. Although there was testimony concerning the efforts necessary to restore the pasture road to its original condition after Gray County ceased using the road, no similar evidence was ever presented which would have allowed a jury to attach a monetary figure to any efforts to restore the adjacent passageway after Cockrell's usage. The jury was the sole judge of the evidence and it alone was entitled to make credibility determinations as to the weight and sufficiency of the evidence. Based upon the record before us, we cannot say that the jury's decision to deny recovery of damages for this trespass was so against the great weight and preponderance of the evidence as to be clearly wrong or

20

manifestly unjust.  Martin simply failed to carry his burden of proof.  Accordingly, his sixth issue is overruled.

## III.  Attorney's Fees

In his Original Verified Petition filed August 17, 2007, Cockrell asserted he was entitled to an easement by prescription over the pasture road because of past use that was "open, notorious, continuous, exclusive and adverse."  On January 31, 2008, Cockrell amended his petition, in part, eliminating his assertion of an easement by prescription.  Martin asserts that he is entitled to reasonable and necessary attorney's fees in defending against Cockrell's claim of easement by prescription pursuant to Section 16.034 of the Texas Civil Practice and Remedies Code.  See Tex. Civ. Prac. & Rem. Code Ann. § 16.034 (Vernon 2002).[21]

### A.  Standard of Review

Because the award of attorney's fees rests in the sound discretion of the trial court, the judgment will not be reversed on appeal without a clear showing of abuse of discretion.  *Ridge Oil Co., Inc. v. Guinn Invs., Inc.,* 148 S.W.3d 143, 163 (Tex. 2004).  *See Smith v. McCarthy*, 195 S.W.3d 301, 303 (Tex.App.--Fort Worth 2006, pet. denied)

---

[21]Although this statute was subsequently amended in 2009; Act of June 29, 2009, 81st Leg., R.S., ch. 901, § 1, 2009 Tex. Gen. Laws, 2431, this suit is governed by the law in effect immediately before the effective date of the amendment, September 1, 2009.  *Id.* at § 2.  Further, for convenience, we will cite to section 16.034 of the Texas Civil Practice and Remedies Code throughout the remainder of this opinion simply as "section 16.034" or § 16.034."

(section 16.034 provides for a discretionary award of attorney's fees).  A trial court abuses its discretion when it acts arbitrarily and unreasonably, or without reference to guiding rules and principles.  *City of Amarillo v. Glick*, 991 S.W.2d 14, 17 (Tex.App.--Amarillo 1997, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)).

## B.  Section 16.034

Section 16.034 states, in pertinent part, as follows:

In a suit for the possession of real property between a person claiming under record title to the property and one claiming by adverse possession, if the prevailing party recovers possession of the property from a person unlawfully in actual possession, the court may award costs and reasonable attorney's fees to the prevailing party.

Section 16.034(a).[22]

The pleadings make clear that at no point did this case involve a claim by Cockrell for adverse possession and there was no adjudication that either party was unlawfully in actual possession of the other's property.  While Martin seeks to equate Cockrell's claim of prescriptive easement to an adverse possession claim there is a fundamental difference between the two, i.e., an adverse possession claim asserts a

---

[22]In general, attorney's fees are not recoverable unless provided for by statute or between the parties. *New Amsterdam Casualty Company v. Texas Industries, Inc.*, 414 S.W.2d 914, 915 (Tex. 1967).  Such statutory provisions for the recovery of attorney fees must be strictly construed because they are penal in nature and are in derogation of the common law.  *Id.*

right to ownership of land while a claim of prescriptive easement asserts a privilege of using the land. Although the elements of the two claims may be quite similar; *Othen*, 226 S.W.2d at 492, their practical effect is significantly different. Because Cockrell made no claim of adverse possession, section 16.034 is inapplicable and the trial court did not abuse its discretion by denying Martin's request for attorney's fees.[23] Martin's seventh issue is overruled.

## CONCLUSION

We reverse that portion of the trial court's judgment awarding a permanent equitable easement and render judgment that Cockrell take nothing as to his claims against Martin; we affirm that portion of the trial court's judgment decreeing that Martin take nothing as to his counterclaim against Cockrell and, in light thereof, we also reverse the trial court's assessment of costs against Martin and render judgment against Cockrell for all costs of court.

Patrick A. Pirtle
Justice

---

[23] *See Spruell v. Goelzer*, No. 13-98-070-CV, 1999 Tex. App. LEXIS 6493, at *3 (Tex.App.--Corpus Christi Aug. 26, 1999, no pet.) (not designated for publication).