In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00130-CV

                                                ______________________________

 

 

                       SHERYL “GENE” MCCLUNG, ET AL.,
Appellants

 

                                                                V.

 

                                             IRENE AYERS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 62nd
Judicial District Court

                                                           Franklin County, Texas

                                                            Trial
Court No. 10,921

 

                                                       
                                           

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            For decades,
the McClung family reached their landlocked property in Franklin County, Texas,
by crossing through a neighboring property owned by the Ayers family.  In 2000, Irene Ayers, sole owner of the Ayers
property at that time, refused to let the McClungs cross her property any
longer.  In July 2009, after trying other
options to access their property, the McClungs filed suit against Ayers,
alleging that they had established an easement across her property by at least
one of four alternative theories—prescription, estoppel, necessity, and
implication.  The jury found that no
easement existed under any of the four theories.  On appeal, the McClungs attack each of the
four findings on both legal and factual sufficiency grounds.  We affirm the judgment of the trial court
because legally and factually sufficient evidence supports each of the jury
findings.

            Before
we discuss the issues, we provide a little background.

 

            The Ayers
land adjoins the McClung property.  The
McClung property is landlocked, whereas the Ayers land is adjacent to a public
roadway.  The McClungs have owned the
property since 1911, though no one has lived on it since 1929.  Since 1929, the McClungs have used the
property a few times per year for hunting, fishing, and camping.

            Ayers’ predecessors
in title, her family, purchased the Ayers property in 1945.  Ayers, herself, ceased living on the property
in 1974 or 1975.  Later, after the death
of her father, Ayers obtained consolidated title to the property through her
mother’s and her father’s remaining heirs. 
Ayers’ property was vacant from 1996 through 2007. 

            For decades,
different members of the McClung family crossed Ayers’ property to reach their
own.  The McClungs argue that it is the
only way in or out.  Gene McClung, sixty-one
years of age, remembers going across Ayers’ property to reach their land when
he was eight–ten years old.  They did not
go there frequently, just a few times every couple of years. 

            In 2000,
Ayers locked a gate across her property and refused to allow the McClungs to
cross.  Gary Buck, a neighboring
landowner and Ayers’ relative, temporarily gave the McClungs permission to
cross his land to reach theirs.  However,
in 2004, Buck withdrew his permission. 
In his revocation letter, he noted that the McClungs have “historically”
accessed their property through the Ayers land.

            The McClungs
tried, but failed, to obtain permission or an easement to cross other
neighboring properties.  With no way into
their property, the McClungs filed suit against Ayers, alleging, alternatively,
four theories supporting the finding of an easement.  After the jury found no easement, the
McClungs’ motions for judgment notwithstanding the verdict and new trial were
denied, and this appeal was filed, challenging the legal and factual
sufficiency of the evidence to support the jury’s findings on each of the four
grounds.

            When a party
challenges the legal sufficiency of the evidence to support an adverse finding
on which he or she had the burden of proof, the party must show that the evidence
establishes a matter of law all vital facts in support of the issue.  In re
Estate of Steed, 152 S.W.3d 797, 806 (Tex. App.—Texarkana 2004, pet. denied)
(citing Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001)).  Evidence
is legally sufficient if it “would enable reasonable and fair-minded people to
reach the verdict under review.”  City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005).  In evaluating the
evidence’s legal sufficiency, “we credit evidence that supports the verdict if
reasonable jurors could, and disregard contrary evidence unless reasonable
jurors could not.” Kroger Tex. Ltd. P’ship
v. Suberu, 216 S.W.3d 788, 793 (Tex. 2006) (citing Wilson, 168 S.W.3d at 827; Am.
InterState Ins. Co. v. Hinson, 172 S.W.3d 108, 114 (Tex. App.—Beaumont 2005,
pet. denied)).  We sustain legal
sufficiency challenges “when, among other things, the evidence offered to
establish a vital fact does not exceed a scintilla.”  Suberu,
216 S.W.3d at 793.  “Evidence does not
exceed a scintilla if it is ‘so weak as to do no more than create a mere
surmise or suspicion’ that the fact exists.”  Id.
(quoting Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 601 (Tex. 2004)).

            When a party
attacks the factual sufficiency of an adverse finding on an issue on which it has
the burden of proof, it must demonstrate on appeal that the adverse finding is
against the great weight and preponderance of the evidence.  Dow
Chem. Co., 46 S.W.3d at 242.  In
determining factual sufficiency, we must consider and weigh all of the evidence,
and can set aside a verdict only if the evidence is so weak or if the finding is
so against the great weight and preponderance of the evidence that it is
clearly wrong and unjust.  Id.; Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983).

(1)        Sufficient Evidence Supports the Jury’s
Finding Against a Prescriptive Easement

 

            The McClungs
attack the jury’s failure to find a prescriptive easement.  As claimants seeking to establish an easement
by prescription, the McClungs must have shown that their use of the Ayers land
was:  (1) open and notorious, (2) adverse
to the owner’s claim of right, (3) exclusive, (4) uninterrupted, and (5)
continuous for a period of ten years.  See Toal
v. Smith, 54 S.W.3d 431, 435 (Tex. App.—Waco 2001, pet. denied).  If there is a failure to establish any of
these essential elements by a preponderance of the evidence, the claim of
easement cannot be maintained.  Brooks v. Jones, 578 S.W.2d 669, 674 (Tex.
1979).  There is ample evidence that the
McClungs crossed the Ayers property openly for an uninterrupted period of more
than ten years.  Though all issues are
disputed, the primary issues are the elements of adversity and exclusivity,
elements that are closely related and thus discussed together. 

            Burdening
another’s property with a prescriptive easement is not well-regarded in the
law.  Toal,
54 S.W.3d at 435.  The hostile and
adverse character of the use is the same as that necessary to establish title
by adverse possession.  Id.  One
test to determine whether a claim is hostile is whether the claimant’s use,
occupancy, and possession of the land is of such a nature and character as to
notify the true owner that the claimant is asserting a hostile claim.  Mack v.
Landry, 22 S.W.3d 524, 531 (Tex. App.—Houston [14th Dist.] 2000, no pet.); Stallman v. Newman, 9 S.W.3d 243, 248
(Tex. App.—Houston [14th Dist.] 1999, pet. denied).  Use by express or implied permission, no
matter how long continued, cannot ripen into an easement by prescription since
adverse use is lacking.  Machala v. Weems, 56 S.W.3d 748, 760
(Tex. App.—Texarkana 2001, no pet.).

            It has long
been the law in Texas that, when a landowner and the claimant of an easement
both use the same way, the use by the claimant does not exclude the owner’s use
and therefore will not be considered adverse.  Brooks,
578 S.W.2d at 673; see also Vrazel v.
Skrabanek, 725 S.W.2d 709, 711 (Tex. 1987).  The easement claimant must exclude, or attempt
to exclude, all other persons, including the true property owner, from using
the roadway.  Stallman, 9 S.W.3d at 249.  Joint
continuous use, without a legally adverse or hostile act, is not sufficient to
establish a prescriptive easement.  Mack, 22 S.W.3d at 532; Vrazel, 725 S.W.2d at 709.

            Here, Gene
and Truman McClung testified that, despite decades of crossing the Ayers
property, the McClungs never asked for permission to do so.  Buck’s revocation letter says that the
McClungs have historically reached their property by crossing the Ayers land.  However, one of the McClungs’ witnesses,
Johnny Grubbs, who, on several occasions, had crossed the Ayers property with
the McClungs, testified that “[the Ayerses] give us access to go through there,
their home,” and that the McClungs “had permission from the lady, Ms. Ayers,
all the time.”  Ayers testified that she,
personally, allowed the McClungs to cross the property two or three times.  In the past, the McClungs “would stop and
ask” and speak to her father.  She agreed
that her family was always gracious about letting the McClungs cross their
property.  There is no evidence that the
McClungs excluded or attempted to exclude other persons from using any roadway
across the Ayers property.

            There is
conflicting evidence regarding whether the McClungs were given permission to
cross the Ayers land.  It is the function
of the jury to pass on the weight of the evidence and the credibility of the
witnesses; and, where there is conflicting evidence, the jury verdict on such
matters is generally regarded as conclusive.  Wilson,
168 S.W.3d at 827; see Lambright v.
Trahan 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied).  This Court cannot substitute its judgment for
that of the jury.  Id.  The McClungs failed to
prove a prescriptive easement as a matter of law because there is more than a
scintilla of evidence supporting the jury’s finding that the McClungs’ use was
permissive.  Suberu, 216 S.W.3d at 793.  The
jury was free to believe Ayers and Grubbs and to disbelieve the McClungs.  Therefore, we are unable to say that the
jury’s verdict is against the great weight and preponderance of the evidence.  Accordingly, we overrule the points of error
attacking the jury’s finding that there was no prescriptive easement.

(2)        Sufficient Evidence Supports the Jury’s
Finding Against an Easement by Estoppel

 

            The McClungs
also assail the jury’s failure to find an easement by estoppel.  An easement, as a general rule, is required
to be in writing, under the statute of frauds.  Machala,
56 S.W.3d at 756; see Kirk
Kuykendall, Easements—Licenses—Statute of
Frauds—Estoppel—Creation of Easements by Oral Agreement, 13 Baylor L. Rev. 180 (1961).  An exception to this general rule is the
doctrine of easement by estoppel, a creature of equity designed to prevent injustice
and protect innocent parties from fraud.  Machala,
56 S.W.3d at 756; Stallman, 9 S.W.3d at
247; Shipp v. Stoker, 923 S.W.2d 100,
102 (Tex. App.—Texarkana 1996, writ denied).  This doctrine is not clearly defined, and its
application depends on the facts of each case. 
Machala, 56 S.W.3d at 756; Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196, 209 (Tex. 1962); Stallman, 9 S.W.3d at 246.  The gravity of a judicial means of acquiring
an interest in land of another solely by parol requires that equitable estoppel
be strictly applied[1]; Allen v. Allen, 280 S.W.3d 366, 381 (Tex.
App.—Amarillo 2008, pet. denied) (citing
Moore County v. Bergner, 526 S.W.2d 702, 706 (Tex. App.—Amarillo 1975, no
writ)), and the estoppel “should be certain, precise and clear.”  Id.
(citing McAnally v. Friends of WCC, Inc., 113 S.W.3d 875, 879 (Tex.
App.—Dallas 2003, no pet.)).

            “The
doctrine of easement by estoppel holds that the owner of the alleged servient
estate may be estopped to deny the existence of an easement by making
representations that have been acted upon by the owner of the alleged dominant
estate.”  Holden v. Weidenfeller, 929 S.W.2d 124, 131 (Tex. App.—San Antonio
1996, writ denied).  “Three elements are
necessary to the creation of an easement by estoppel:  (1) a representation communicated, either by
word or action, to the promisee; (2) the communication was believed; and (3)
the promisee relied on the communication.”[2]
 Id.
(citing Storms v. Tuck, 579 S.W.2d
447, 452 (Tex. 1979)). “These elements apply at the time the communication
creating the alleged easement is made.”  Id.  “An easement by estoppel, once created, is
binding upon successors in title if reliance upon the existence of the easement
continues.”  Id.

            To establish
the element of a representation, the McClungs rely solely on the legal fiction
of representation by silence.  “The
principle of estoppel by silence arises where a person is under a duty to
another to speak, but refrains from doing so and thereby leads the other to act
in reliance on a mistaken understanding of the facts.  The duty to speak does not arise until the
silent party is himself aware of the facts.”  Storms,
579 S.W.2d at 452.  The McClungs contend
that the Ayers family had a duty to speak and, because the Ayerses never
attempted to stop them or require them to stop and ask permission, that the
Ayerses made a representation by silence.

            Here,
in their effort to establish a representation by silence, the McClungs
undermine their proof of the element of belief. 
In this case, Ayers testified that the McClungs would “stop and ask”
before using the road, and Grubbs testified that the McClungs had the Ayerses’
permission to use the road.  Such testimony,
along with the McClungs obtaining a permissive easement from Buck after Ayers
refused them access, allows the jury to infer that the McClungs did not believe
they had a legal right to use the road across the Ayers property.  See
Martin v. Cockrell, 335 S.W.3d 229, 238–41 (Tex. App.—Amarillo 2010, no
pet.) (“gentlemen’s agreement” or “friendly neighborly permission” to use land
does not support easement by estoppel).

            There is
also very little evidence of the element of reliance.  Gene testified that, in the 1980s, he would
mow the roadway.  Gene has a trailer on
the property, and Truman once moved a trailer there as well.  Both trailers, however, were moved there
across Buck’s property, not the Ayers property. 


            The McClungs
cite several cases in support of their argument, notably including Wallace v. McKinzie, 869 S.W.2d 592
(Tex. App.—Amarillo 1993, writ denied). 
In Wallace, the McKinzie
property was landlocked by the Wallace property.  Id.
at 594.  Since they purchased the
property in 1920, the McKinzies used a specific road through the Wallace land
to access their property because it was the only access road.  Id.  After a specific conversation about the
roadway between A.D. McKinzie and Bert Wallace, A.D. cut brush near the road,
tried to keep water from running in the road, and improved his property.  Id.
at 595.  A.D. explained that he reached
an agreement with another member of the Wallace family to place double locks on
the gate in the road that allowed both families access to the road.  Id.  There was no objection to the McKinzies using
the road.  Id.

            The McClungs
also cite Holden, where a road was
used for thirty-five years to reach landlocked property before the servient
owner tried to block access to the road. 
929 S.W.2d 124.  The court held
that an easement by estoppel was established because a prior deed implied that
the dominant property had the right to use the road, the dominant owner built a
home and other major improvements on his property, the dominant owner
contributed to the maintenance of the road, and there was testimony that the
dominant owner was allowed to put his own lock on the road’s gate.

            In Exxon v. Schutzmaier, an easement by
estoppel was found to exist where Browner and his successors in interest spent
significant cost and labor improving their landlocked property,  and, until a few years before suit was filed,
mail carriers, school buses, and delivery vehicles used the road.  537 S.W.2d 282 (Tex. App.—Beaumont 1976, no
writ).  In so holding, the court noted
that Browner previously obtained a 600-foot easement from Exxon for the express
and sole purpose of reaching the access road from which Exxon was presently
trying to exclude Browner’s successor in interest, Schutzmaier.

            These
cases are distinguishable from the present case.  Here, there is no representation from the
servient owner, be it via conversation, prior deeds or documents implying a
right of use, or actions such as allowing the servient owner to put his own
lock on an access gate.  While the jury
is free to infer a representation by silence, they are likewise free not to do
so.  Similarly, the dominant owners in
the above cases took significant actions in reliance, such as significantly
improving their property and/or the road, whereas here, the McClungs had two
trailers and utility access on their property, but both were placed there not
across the disputed roadway or the Ayers land, but across different neighboring
properties.  There is no evidence that
the McClung property was purchased with the understanding that the McClungs
could use a road across what would become the Ayers land.  In this case, there is evidence indicating
that the McClungs did not believe they had a right to use the road, because
there is testimony that they always “stopped and asked,” even though Gene
characterized it as a courtesy. 

            Based on
this record, the McClungs have failed to meet their burden on appeal regarding
their challenges to the legal and factual sufficiency of the evidence.  See
Wilson, 168 S.W.3d at 827.  There is
conflicting evidence regarding the existence or nonexistence of a
representation, belief, and reliance on such belief.  Therefore, the McClungs have failed to prove
an easement by estoppel as a matter of law. 
Likewise, we cannot say that the jury’s failure to find an easement by
estoppel is so weak or so against the great weight and preponderance of the
evidence that it is clearly wrong and unjust.  See Dow
Chem., 46 S.W.3d at 242.  Accordingly, we overrule the McClungs’
challenges intended to obtain an easement by estoppel.

(3)        Sufficient Evidence Supports the Jury’s
Finding Against an Easement by Necessity

 

            The McClungs
further argue that the jury’s failure to find an easement by necessity was
error, based on legal and factual sufficiency grounds.

            Texas
caselaw establishes that, when a grantor conveys part of a tract of land while
retaining the remaining acreage for himself or herself, there is an implied
reservation of a right of way by necessity on the land conveyed, when no other
access exists.  Bains v. Parker, 182 S.W.2d 397 (Tex. 1944).  In order to establish an implied easement by
necessity, a party must establish (1) unity of ownership of the dominant
and servient estates before severance,[3]
(2) the necessity of a roadway, and (3) existence of the necessity when the
estates were severed.  Koonce v. Brite Estate, 663 S.W.2d 451,
452 (Tex. 1984); Machala, 56 S.W.3d at
755; Daniel v. Fox, 917 S.W.2d 106,
111 (Tex. App.—San Antonio 1996, writ denied). 
The way of necessity must be more than one of convenience; in other
words, if the owner of the land can use another way, he or she cannot claim an
easement by implication.  Duff v. Matthews, 311 S.W.2d 637, 640 (Tex.
1958); Machala, 56 S.W.3d at 755.

            The McClungs
argue that there was a necessity at the time of patenting, that is, when the
common owner, Texas, severed the properties into two different surveys.  The McClung land was patented in 1896, as
part of the Doxey Survey.  The Ayers land
was patented thirty-six years earlier, in 1860. 
There is no evidence that a road was necessary in 1860 or 1896.

            The McClungs
have failed to establish as a matter of law the requisite elements of an
easement by necessity.  Further, the
jury’s determination that the McClungs did not establish such requisite
elements was not so against the great weight and preponderance of the evidence
as to be manifestly wrong and unjust.  We
overrule the points of error regarding an easement by necessity.[4]

(4)        Sufficient Evidence Supports the Jury’s
Finding Against an Easement by Implication

 

            Finally, the McClungs argue
that the jury’s failure to find an easement by implication was not supported by
the evidence.  An easement may be implied
from what “a grantor and grantee must have intended had they both given the
obvious facts of the transaction proper consideration.”  Drye,
364 S.W.2d at 207.  An easement implied
from prior use requires (1) unity of ownership of the dominant and servient
estates when the estates are severed and (2) that the dominant estate’s use of
the servient estate was continuous, apparent at the time the estates were
severed, and (3) reasonable necessity of the easement to the use and enjoyment
of the land granted.  See Bickler v. Bickler, 403 S.W.2d 354,
357 (Tex. 1966); Daniel, 917 S.W.2d
at 110.

            The points
of error regarding an easement by implication suffer from similar deficiencies
as those regarding an easement by necessity.  There is no evidence that the McClungs’ use of
the Ayers property was continuous or apparent at the time the estates were
severed, nor is there evidence that the use was reasonably necessary at that
time in order to enjoy the McClung land. 
The jury was within its province not to infer such facts or conclusions
from the evidence presented at trial. 
Accordingly, we overrule the points of error relative to an easement by
implication.

            We
affirm the judgment.

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          September
28, 2011

Date Decided:             October
25, 2011

 











[1]The
doctrine of easement by estoppel has not been applied with the same strictness
and conclusiveness as easements by implication. 
See Drye, 364 S.W.2d at 209.

 





[2]In North Clear
Lake Development Corp. v. Blackstock, 450 S.W.2d 678 (Tex. Civ. App.—Houston
[14th Dist.] 1970, writ ref'd n.r.e.), the court, in finding an easement by
estoppel, also considered the fact that improvements which had been made were
permanent and substantial, that such improvements were open and obvious to the
owner of the servient estate, that the servient estate had constructive notice
of the activities of the dominant estate holders, and that such use and
improvements had the tacit consent of the servient estate owners because there
was no complaint made when the improvements were constructed.  In Drye,
the Texas Supreme Court noted that estoppel cases are not limited to situations
involving money spent improving the servient estate, though this group does
form a large part of the cases affixing easements appurtenant by estoppel.  364 S.W.2d at 210.  It appears clear then that, in using this
language, the Court did not intend to limit the application of the doctrine to
only those situations where expenditures were made on the servient estate; it
was merely recognizing that many cases did involve servient funds.

                The
Austin court also requires the existence of a vendor/vendee relationship.  Scott v.
Cannon, 959 S.W.2d 712, 721 (Tex. App.—Austin 1998, pet. denied).  We decline to require such an element in order
to establish an easement by estoppel.  In
one of the first cases involving the question of easement by estoppel, the
Texas Supreme Court outlined the elements necessary to establish such an
easement, and nowhere in the opinion is a vendor/vendee relationship required.  F.J.
Harrison & Co. v. Boring & Kennard, 44 Tex. 255, 267–68 (1875).  Since the Harrison
case, the Texas Supreme Court has never required the existence of a
vendor/vendee relationship in applying the doctrine of easement by
estoppel.  A review of Texas cases
reveals that the holding in Scott has
been rejected by those courts that have considered the question of the
necessity of a vendor/vendee relationship to establish an easement by estoppel.
 See
Murphy v. Long, 170 S.W.3d 621, 627–28 (Tex. App.—El Paso 2005, pet.
denied); see also Mack, 22 S.W.3d at
529–30) (discussing cases holding that vendor/vendee relationship not
required).





[3]At
trial and here on appeal, the McClungs argue that the State of Texas is the
previous common owner of the two tracts. 
Other than the State, no common owner, before or at the time of
severance, appears in the evidence.  The
McClungs do not cite any caselaw to support their argument that the State may
be used as a prior common owner, and we are aware of none.  However, the jury instructions at trial
stated that “the Court has previously determined that there was a previous
unity of ownership of the dominant and servient estates.”  The McClungs failed to object to the
instruction at trial, so we must accept the trial court’s finding.

 





[4]A
1964 United States Geologic Survey map shows what appears to be a road going
through the Ayers property in the same approximate location as the road to
which the McClungs now claim an easement. 
While one could argue that the jury could infer that a road was
necessary at that time, the jury was also free not to do so.