

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-23-00226-CV
_____

TOM S. BLOXOM, AS TRUSTEE OF THE TOM S. BLOXOM
2012 CHILD'S TRUST NO. 2, APPELLANT

V.

MUTT LAND HOLDINGS, LP, APPELLEE

On Appeal from the 216th District Court
Gillespie County, Texas
Trial Court No. 16830, Honorable Albert D. Pattillo III, Presiding

March 25, 2024

MEMORANDUM OPINION[1]

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Tom S. Bloxom, as trustee of the Tom S. Bloxom 2012 Child's Trust No. 2, appeals the trial court's order granting summary judgment in favor of appellee, Mutt Land Holdings, LP. The underlying dispute concerned the existence of a purported easement by estoppel over an "access road" on ranch land Bloxom owned. Mutt claimed

---

[1] Because this matter was transferred from the Fourth Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

one and sued Bloxom for judicial recognition of it. The cause arrived here through summary judgment. That is, the trial court granted Mutt's motion for summary judgment in which it endeavored to establish, as a matter of law, the easement's existence. The trial court granted the motion and imposed the easement. Finding a material question of fact, we reverse.

The statute of frauds generally requires a writing to establish an easement. *Gordon v. Demmon*, No. 07-17-00133-CV, 2019 Tex. App. LEXIS 3262, at *13-14 (Tex. App.—Amarillo Apr. 23, 2019, pet. denied) (mem. op.). However, the doctrine of equitable estoppel provides an exception to the rule. *Id.; see Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex. 1979). Such an easement arises when the claimant proves three elements: the owner of the land uttered a communication, either by word or action, and the promisee both believed and relied upon the communication. *Ingham v. O'Block*, 351 S.W.3d 96, 100 (Tex. App.—San Antonio 2011, pet. denied); *Robinson v. Riddick*, No. 04-15-00272-CV, 2016 Tex. App. LEXIS 3204, at *8 (Tex. App.—San Antonio Mar. 30, 2016, no pet.) (mem. op.). The communication must do more than simply evince permission to use the land but rather a "legal right" to do so. *See Ingham*, 351 S.W.3d at 101 (rejecting the claim of easement by estoppel because the testimony did not support the conclusion that Ben Ingham did not believe he had "a legal right" to use Hunt Road); *Stallman v. Newman*, 9 S.W.3d 243, 247 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (stating that though the Stallmans gave Newman permission to use the road in 1980, permissive use is inconsistent with Newman's claim that she has "a legal right to use the road"). As we concluded in *Martin v. Cockrell*, 335 S.W.3d 229 (Tex. App.—Amarillo 2010, no pet.), a "gentlemen's agreement" was insufficient to create an

easement by estoppel. *Id.* at 240. And, being an equitable doctrine, its application depends on the unique facts of each case. *Robinson*, 2016 Tex. App. LEXIS 3204, at *8; *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.—San Antonio 1996, writ denied). Finally, once created, an easement by estoppel binds successors in title if reliance upon its existence continues. *Ingham*, 351 S.W.3d at 100.

Construing the summary judgment record in a light most favorable to the nonmovant (Bloxom), *see Yarbrough v. McCormick*, No. 04-17-00283-CV, 2018 Tex. App. LEXIS 4719, at *16 (Tex. App.—San Antonio June 27, 2018, no pet.) (mem. op.) (requiring same), we note the following. Bloxom made no representations to Mutt concerning use of the access road. Rather, the pivotal communication allegedly occurred over 80 years earlier. Neither Bloxom nor Mutt was present when it was uttered. Nor were we cited to evidence indicating that any currently living person was.

According to Robert Faught, both the Bloxom and Mutt parcels were unified in ownership by a family named Leutbecher. The Leutbechers decided to divide the realty and sell a portion to Alonzo Faught (Robert's grandfather) around 1937. In conveying it, one of the owners, Charlie Leutbecher, purportedly uttered the requisite communication. In his affidavit, Robert said it consisted of Leutbecher's telling Alonzo that "the owner" of the property to be conveyed "had ***a non-possessory right*** to use the Access Road to access and improve . . ." it. (Emphasis added). Via deposition, though, Robert denied using those words, despite his attestation to their accuracy in the affidavit. Instead, Leutbecher allegedly told Alonzo "they could use that access anytime they wanted to." Robert became aware of this purported communication during later conversations in which Alonzo participated. Thereafter, use of the road by the Faught claim commenced

3

and continued until Mutt acquired it. By that time, Bloxom had bought the portion of the property retained by the Leutbechers after the 1937 division. And though he knew of the Faughts' use of the access road, he objected to Mutt's continuation of it. So too did he deny the existence of an easement over it.

Again, there was no writing to manifest a purported easement. The communication was oral. And assuming it was made, it was so made around the time the Leutbechers were dividing their land and conveying a portion of same. Moreover, that conveyance was made to an already existing neighbor, Alonzo. The latter being an existing neighbor and possible acquaintance of the Leutbechers, we cannot discount the possibility that a factfinder reasonably could construe reference to "they" as intending only Alonzo and his family. Indeed, no one cited evidence suggesting that at the time of the supposed discussion between Leutbecher and Alonzo, *see Schwendeman v. BT SFRL I, LLC*, No. 02-19-00007-CV, 2020 Tex. App. LEXIS 861, at *20-21 (Tex. App.—Fort Worth Jan. 30, 2020, pet. denied) (mem. op.) (requiring the focus to lie on the circumstances at the time of the easement's supposed creation), either participant spoke about third parties unrelated to Alonzo utilizing the property for their own enjoyment or benefit. Indeed, if one were to assign weight to comments within Robert's affidavit, the utterance tied use of the access road to improving the land being acquired, as opposed to use by or for the benefit of third parties.

Nor does saying "they" could use the road "anytime they wanted to" pretermit a reasonable factfinder from interpreting the clause as merely an informal arrangement between neighbors regarding the road's permissive use for purposes of convenience.

4

This is true even though the Faughts periodically accepted the invitation over the years and until they were no longer neighbors.

Next, telling Alonzo he had "a non-possessory right to use" is one thing. Telling him he could use the road "anytime" is another. The meaning of the former comes with relative certainty. That of the latter, not so much. So, one of the first material issues of fact concerns what, if anything, was actually said around 84 years ago and contemporaneously heard by none of the parties or immediate predecessors in interest.[2] Another is what Leutbecher intended when uttering the statement to a neighbor buying his land. Matters of intent are inherently questions of fact dependent upon the circumstances surrounding the utterance. See *Gutierrez v. Cty of Zapata*, 951 S.W.2d 831, 837 (Tex. App.—San Antonio 1997, no pet.) (stating that the intent of one purporting to grant a public right of way is generally a question of fact). Another is what Alonzo believed when hearing his neighbor's purported words. That too is no less a question of fact dependent upon the surrounding circumstances. That Robert would later ask if it was "alright" for Mutt to widen the access road could be viewed as his uncertainty about the scope of any supposed easement, if not the existence of the easement itself. Simply put, uncertainty abounds which prevents a jurist from concluding, as a matter of law, that Alonzo or his successors gained a conveyable right from words permitting a neighbor to use the access road "anytime."

Finding material issues of fact preventing entry of summary judgment relieves us from addressing Bloxom's remaining issue. It concerned the trial court's refusal to sustain

---

[2] We note also a potential credibility issue exists here. Robert might have been biased in favor of the existence of an easement over the access road because he conveyed such to Mutt, thereby subjecting himself to possible complaints concerning that conveyance.

objections to summary judgment evidence.  Thus, we sustain Bloxom's second issue, reverse the summary judgment, and remand the cause to the trial court.


Brian Quinn
Chief Justice